332 So.2d 262 (1976)
STATE of Louisiana
v.
August GORDON et al.
No. 57390.
Supreme Court of Louisiana.
May 17, 1976.
*263 George C. Ehmig, New Orleans, for Ronnie Nicholas.
William H. Barth, III, New Orleans, for Edward Jones.
Ronald J. Gillen, Jefferson, for August Gordon.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Abbott J. Reeves, Director, Research and Appeals Div., for plaintiff-appellee.
MARCUS, Justice.
August Gordon, Ronnie Nicholas and Edward Jones were charged in the same information with the armed robbery of Josephine Allison on January 3, 1974, in violation of La.R.S. 14:64. After trial by jury, they were found guilty as charged. Subsequently, August Gordon and Ronnie Nicholas were each sentenced to serve twenty-five years; Edward Jones was sentenced to serve fifteen years. All sentences were at hard labor and without benefit of parole, probation or suspension of sentence. On appeal, defendants rely on two assignments of error for reversal of their convictions and sentences.

ASSIGNMENT OF ERROR NO. 1
Defendants moved to suppress, for use as evidence at trial on the merits, certain tangible property on the ground that the objects were obtained as a result of unconstitutional searches and seizures of evidence from their persons and the vehicle in which they had been riding at the time of their arrest. Defendants also moved to suppress their pretrial identification. These motions were denied by the trial judge. Defendants claim that the trial judge erred in these rulings.
The context facts are as follows. At about 10:30 a.m. on January 3, 1974, Officer Dan Fortier was on a routine patrol on U.S. Hwy. 90 in Jefferson Parish. A pink Pontiac traveling in the same direction passed him. A similar vehicle had been reported stolen at roll call that morning. As the car passed, he was able to see that three numbers of the license plate matched those of the vehicle reported stolen. After catching up with this vehicle, he observed that all the license plate numbers matched those given at roll call. However, to be certain, he sought a stolen vehicle check over the police radio. In order to avoid suspicion, Fortier drove ahead of the Pontiac, keeping it within his view through his rear view mirror. Before receiving the confirmation call, he reached the intersection of U.S. 90 and a right turnoff to U.S. 90-B. Since the Pontiac was traveling in the right-hand lane of traffic, Fortier opted the right turn-off *264 to U.S. 90-B; however, the Pontiac continued straight on U.S. 90, making it impossible for him to follow. Fortier immediately radioed ahead to officers at the Third District Station, a short distance away on U.S. 90, alerting them to the approach of the stolen vehicle with three black males as its occupants. He then proceeded to make a U-turn and, while doing so, received a radio communication that an armed robbery had just taken place at Allen's Grocery Store in the 6600 block of River Road. He was ordered to proceed to that location, where he arrived about five minutes later. Another police unit was on the scene when he arrived.
Meanwhile, in response to Fortier's call, Officers Samuel Capaci and Roger Gorumba of the Third District set up a road block within seconds of the call. As they saw the approach of the pink Pontiac, they received another call that an armed robbery had just taken place at Allen's Grocery Store on River Road with a description of the vehicle (pink Pontiac) and its occupants (three black males). The broadcast also indicated that one of the suspects was wearing an army fatigue jacket. The Pontiac was stopped and the three black male occupants (defendants) were ordered out of the vehicle. They were made to lie face down on the ground, handcuffed and frisked for weapons. Money was observed on the back floor and stuffed in the torn lining of the seat of the car. Also observed was an army fatigue jacket on the rear seat. A sawed-off shotgun was on the front floorboard. The car was verified as being stolen. Defendants were placed under arrest for possession of a stolen vehicle and armed robbery, advised of their rights and searched. They were then removed to the Third District Station in a paddy wagon. Shortly thereafter, the vehicle was searched at the scene. Money seized from defendants and the money, army jacket (with a gun and bullets in the pocket), and a sawed-off shotgun seized from the Pontiac were the objects sought to be suppressed in the motion to suppress evidence.
It is well settled that a search conducted without a warrant issued upon probable cause is per se unreasonable under the fourth amendmentsubject only to a few specifically established and well-delineated exceptions. Schneckloth v. Bustamonte, 412 U.S. 93 S.Ct. 2041, 36 L.Ed. 2d 854 (1973); Coolidge v. New Hampshire, 403 U.S. 443, 71 S.Ct. 2022, 29 L.Ed. 2d 564 (1971). One of these exceptions is a search incident to a lawful arrest. While a search without a warrant is, within limits, permissible if incident to a lawful arrest, if an arrest without a warrant is to support an incidental search, it must be made with probable cause. Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that an offense has been committed. Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959). The limits of such a search are the arrestee's person and the area within which he might gain possession of either a weapon or something that could be used as evidence against him. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).
Another exception to the warrant requirement of the fourth amendment is the so-called "automobile exception." This exception is based upon the existence of probable cause to search the vehicle and exigent circumstances which render it impracticable to secure a warrant. Coolidge v. New Hampshire, supra; Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); State v. Tant, 287 So. 458 (La.1974); State v. McQueen, 278 So.2d 114 (La.1973).
Clearly, the arrests herein were made with probable cause. The facts and circumstances within the arresting officers' knowledge and of which they had reasonably trustworthy information were sufficient *265 for them to believe that defendants had committed the offenses for which they were arrested (possession of a stolen vehicle and armed robbery). Hence, the arrests were lawful and support the warrantless searches of defendants' persons made incidental thereto and within the Chimel limits. Likewise, the officers had probable cause to believe that the car contained contraband or other articles which they were entitled to seize. Therefore, the officers had probable cause to perform a warrantless search of the automobile while it was still located on the highway. The search was clearly reasonable under the fourth amendment. The trial judge correctly denied the motion to suppress the evidence seized from defendants and the vehicle in which they had been riding at the time of their arrest.
We next consider defendants' claim that the trial judge erred in denying their motion to suppress identification. The motion was predicated on an alleged "showup" identification occurring at the scene of the arrest between the victim and defendants. No evidence was adduced at the hearing on the motion that such a confrontation occurred. Rather, the evidence was to the contrary. In denying the motion, the trial judge found as a fact that no such "showup" had taken place at the scene. Nevertheless, he reserved to defendants the right to pursue the matter further at trial. No evidence of a "showup" was produced at trial. The only evidence regarding a pretrial identification was that of a lineup held on January 8, 1974 (some five days after the robbery and arrest of defendants) at which the victim was able to identify only defendant Nicholas. She testified that she selected him from a group of nine men and that no photographs or descriptions of suspects were given to her prior thereto. She further stated that no suggestions were made to her at the time of the lineup. She was steadfast in her testimony that her in-court identification of defendant Nicholas was based solely on her recollection of him at the time of the robbery when he confronted her face-to-face at close range (two feet) and robbed her at gunpoint.
Since there was no evidence of a "showup" at the scene of the arrest or of any infirmity in the lineup procedure, defendants' claim that the pretrial identification was impermissibly suggestive lacks merit. In any event, the victim's in-court identification of defendant Nicholas was based on her independent recollection of him at the time of the robbery. Under these circumstances, the trial judge correctly denied the motion to suppress identification.
In sum, Assignment of Error No. 1 is without merit.

ASSIGNMENT OF ERROR NO. 2
Defendants contend that the trial judge erred in permitting the state to exhibit an army jacket, allegedly worn by one of the robbers, to the victim of the robbery. They claim that this was suggestive and would have constituted an insufficient predicate for its introduction into evidence.
There is no merit to this contention. The victim had described the gunman as wearing an army jacket. The state attempted to show the jacket to the witness for her visual identification. Defendants' objection was overruled by the trial judge. First, the army jacket was never shown to the witness. However, even if it had, it would not have been error. Secondly, there was no objection when the jacket had been previously introduced in evidence after a proper predicate had been laid.
In State v. Dotson, 260 La. 471, 256 So.2d 594 (1974), we stated:
To admit demonstrative evidence at a trial, the law requires that the object be identified. The identification can be visual, that is, by testimony at the trial that the object exhibited is the one related to the case. It can also be identified by *266 chain of custody, that is, by establishing the custody of the object from the time it was seized to the time it is offered in evidence.
The law does not require that the evidence as to custody eliminate all possibility that the object has been altered. For admission, it suffices if the custodial evidence establishes that it is more probable than not that the object is the one connected with the case. A preponderance of the evidence is sufficient. [citations omitted]
The lack of positive identification goes to the weight of the evidence, rather than to its admissibility. Ultimately, connexity of physical evidence is a factual matter for determination by the jury. [citations omitted]
In the instant case, Officer William Vieira testified that he removed the army jacket from the seat of the Pontiac at the scene of the arrest, tagged it, placed his initials thereon, and turned it over to a technician at the crime lab (Mr. Wallace Friloux). Mr. Friloux testified that he placed it in the evidence vault until he delivered it to Mr. Arthur Fields, Jr. (evidence clerk) two hours later. Mr. Fields testified that, upon receiving the clothing items, he sealed them in a bag which was kept in the evidence room until delivered by him to court on the day of trial.
We find that the army jacket was properly admitted in evidence, without objection, after the state had established a sufficient chain of custody. Clearly, it was more probable than not that the object was related to the case. Additionally, it would have been proper for the state to have exhibited the army jacket to the victim for her visual identification. In such an event, any lack of positive identification by her would go to the weight of the evidence rather than to its admissibility. Under these circumstances, the ruling of the trial judge was correct. Assignment of Error No. 2 lacks substance.

DECREE
For the reasons assigned, the convictions and sentences are affirmed.