374 So.2d 1195 (1979)
STATE of Louisiana
v.
Earl SPENCER.
STATE of Louisiana
v.
James JOHNSON.
Nos. 63917, 64066.
Supreme Court of Louisiana.
September 4, 1979.
*1196 Larry P. Boudreaux, Thibodaux, for defendants-appellants.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Francis Dugas, Dist. Atty., John J. Erny, Jr., Asst. Dist. Atty., for plaintiff-appellee.
MARCUS, Justice.
Earl Spencer and James Johnson were separately indicted by the grand jury *1197 for the crime of possession with intent to distribute marijuana in violation of La.R.S. 40:966. After separate trials by jury, both defendants were found guilty as charged and each was sentenced to serve ten years at hard labor and to pay a fine of fifteen thousand dollars. Defendants separately appealed to this court, each relying on six assignments of error for reversal of his conviction and sentence.[1]

ASSIGNMENT OF ERROR NO. 1

(Spencer and Johnson)
Defendants contend the trial judge erred in denying their joint motion to suppress physical evidence on the ground that the evidence was obtained as a result of an unconstitutional search and seizure.
We have reviewed the record and find that the trial judge accurately set forth in his per curiam comments the facts as they relate to the search and seizure. Accordingly, we adopt the following statement of facts as our own:
During the latter part of April of 1978, a confidential informant told Lafourche Parish Sheriff's Narcotics Agent, Alan Wall, that certain individuals would attempt to bring a large shipment of marijuana into the United States through the Port Fourchon area in the near future. The informant related that the leader of the operation was Jack Nichols and that two of the participants were Thomas Ruth and Jerry Trent. The informant further related that the shipment would be brought in by boat and loaded into large trucks for transportation. At a later point in time, the informant advised that the vessel YUCATAN would be used in this smuggling operation. The confidential informant had proved his reliability on two or three previous occasions when he furnished information which led to arrests.
The Port Fourchon is a publicly owned dock and boat landing under the jurisdiction of the Greater Lafourche Port Commission (R.S. 34:1651 et seq.). It is located in Lafourche Parish approximately two or three miles up Bayou Lafourche from the Gulf of Mexico and is south of the Leeville Community. It is used by fishermen and by persons engaged in gulf offshore oil field transportation. Access to the port may be achieved from the Gulf of Mexico through Bayou Lafourche. Access to the port by road is by La. Highway 1, and then west on La. Highway 3090 (the Fourchon Road). The dock area is fenced and there is a gate at the road entrance which remains open. The water entrance is a channel approximately one hundred (100') feet in width. Portions of the port area are leased to private firms or individuals but the public has the use and access to all dock facilities at any time. It is the policy of the Greater Lafourche Port Commission that law enforcement agents and officers shall have free access to all port facilities at any time.
After his conversation with the reliable confidential informant, Captain Wall made contact with State Police Narcotics Agents and area customs officials, and an investigation was commenced. A command post headed by State Police Lieutenant Donald Breaux was set up at the Tropicana Motel on Grand Isle, Louisiana. Several agents conducted continuous surveillance of the port area, on the residence of Jack Nichols located near the Lions Den Lounge in the Leeville Community, and on several business places in the Leeville area.
Customs aircraft were used during the investigation for monitoring offshore traffic near the Port Fourchon area. Prior to the night in question, information was received from the informant that the vessel YUCATAN entered the port and *1198 was met by Jack Nichols.[[2]] On May 24, 1978, Customs Pilot Kennedy Downie, reported that the YUCATAN was located approximately fifty (50) miles offshore from the Port Fourchon heading in a southerly direction. On the afternoon of May 25, 1978, Sergeants Mark Zeringue and Paul Trahan of the Louisiana State Police observed two trucks, one a ten-wheeler and the other an eighteen-wheeler being escorted south on La. Highway 1 by a black and white Lincoln Continental. The ten-wheeler truck was followed to the Lions Den in Leeville and the eighteen-wheeler truck was followed to Grand Isle.[[3]]
At approximately 10:45 o'clock p. m. on May 25, 1978, State Police Officer Ronnie Theriot and Customs Agent Dick Ward were put down on the Fourchon Road five hundred (500') feet from La. Highway 1. They then walked through the bushes along the Fourchon Road and positioned themselves on the west or left side of the road entrance to the port, where they remained until approximately 1:50 o'clock a. m. on the morning of May 26, 1978. From this position, they observed the ten-wheeler truck previously identified and several pickup trucks enter the port area. Officers Theriot and Ward also heard the sound of a boat engine in the dock area but saw no off-loading activity at that time. Officers Theriot and Ward kept other law enforcement officers in the vicinity informed of their observations by radio. This information was then relayed to the command post on Grand Isle. Theriot and Ward then walked closer to the dock area and observed the vessel YUCATAN from across the channel of the port water entrance. From that position they observed the ten-wheeler truck backed to the wharf were [sic] the YUCATAN was docked. Several persons were observed in the truck and on the boat. There was no light on the deck of the YUCATAN, but there was light radiating from within the hold of the vessel. Theriot and Ward could see people lifting bales from within the vessels hold and passing them to people on the deck of the vessel. The persons on the deck of the vessel then passed the bales over the dock and into the rear of ten-wheeler truck. The bales were similar in size and configuration to bales of marijuana previously observed by the officers. At this point in time, the command post on Grand Isle moved to the tank battery below the Fourchon Road.
At approximately 2:00 o'clock a. m. on May 26, 1978, the eighteen-wheeler truck previously identified was observed to enter the port area. At this time, the ten-wheeler truck was moved thirty (30') to forty (40') feet forward and parked. The eighteen-wheeler truck was then brought into position and backed to the dock in the same position in which the ten-wheeler truck had been located. After approximately fifteen (15) minutes of loading operations from the YUCATAN to the eighteen-wheeler truck all activities stopped.[[4]] At approximately 2:25 o'clock a. m. on May 26, 1978, based on the information transmitted to him from officers Theriot and Ward and based on the prior information obtained from the reliable confidential informant and from surveillance, Lieutenant Donald Breaux gave the order for all agents in the area to move in to the dock area of the port and arrest the persons present. Law enforcement agents then converged on the docking area of the port in a caravan of approximately six or seven vehicles with two agents in each.

*1199 Upon arriving at the parking lot and dock area of the port, agents saw bales of marijuana in the eighteen-wheeler through its opened back doors. A residue of marijuana was found on the deck and in the hold of the vessel YUCATAN. The YUCATAN had been completely unloaded. No evidence was seized from the YUCATAN. The ten-wheeler truck was opened after the eighteen-wheeler was inspected and found to contain all of the remaining bales of marijuana. The persons present in the port docking area were arrested by the law enforcement officers. The ten-wheeler and eighteen-wheeler trucks and their contents were seized and secured as evidence.
It is well settled that a search conducted without a warrant issued upon probable cause is per se unreasonable under the fourth amendment, subject only to a few specifically established and well delineated exceptions. Schneckloth v. Bustamonte, 412 U.S. 93, 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); State v. Gordon, 332 So.2d 262 (La. 1976). One of these exceptions to the warrant requirement is the so-called "automobile exception." This exception is based upon the existence of probable cause to search the vehicle and exigent circumstances which render it impractical to secure a warrant. Coolidge v. New Hampshire, supra; Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); State v. Gordon, supra; State v. Tant, 287 So.2d 458 (La.1974); State v. McQueen, 278 So.2d 114 (La.1973).
In the instant case the officers clearly had probable cause to believe that the two trucks contained contraband which they were entitled to seize. The officers had received information from a reliable informant, who had previously furnished information leading to arrests, that certain individuals, three of whom were named, planned to bring into the United States by boat a large quantity of marijuana through the Port Fourchon area in the near future and thereafter to load the shipment into large trucks for transportation. The informant also related that the vessel YUCATAN would be used in the operation. This information triggered a three-to-four week investigation and surveillance. Specifically, officers observed one of the named suspects travel to New Orleans to secure two large trucks and later visit the YUCATAN a week or two before the incident at issue while it was docked at Port Fourchon. Additionally, the YUCATAN was observed shortly thereafter about fifty miles offshore from Port Fourchon in the Gulf of Mexico traveling in a southerly direction. On the afternoon of May 25, 1978, officers further observed the two trucks being brought into the area and towards evening they also noted an unusual amount of activity around the Lion's Den, owned by Jack Nichols, the person named by the informant as the leader of the smuggling operation. Finally, in the early morning hours of May 26, 1978, Officers Ward and Theriot, who were secreted in the immediate vicinity of the dock area, observed bales similar in size and configuration to bales of marijuana being unloaded from the YUCATAN and placed onto the two trucks previously identified. At this point, the informant's tip, concededly inadequate by itself to establish probable cause, was sufficiently corroborated to provide the officers' probable cause to search the trucks. Also, exigent circumstances existed at this point in time since it was clear that the departure of the trucks was imminent. Loading of the trucks had been completed and their engines were running. Hence, the officers acted properly in searching and seizing the contraband contained in the two trucks. Accordingly, the trial judge did not err in denying defendants' motion to suppress the evidence.
Assignment of Error No. 1 is without merit.

ASSIGNMENTS OF ERROR NOS. 5 AND 6

(Johnson)
Defendant Johnson contends the trial judge erred in refusing to give to the jury two of his requested special charges.
*1200 The record indicates that Johnson submitted a series of requested special charges to the trial judge for his consideration. One of the special charges requested read as follows:
It is not sufficient you should believe a defendant's guilt only probable. In fact, no degree of mere probability of guilt will authorize a conviction; but the evidence must be of such a character and tendering [sic] as to produce a moral certainty of the accused's guilt to the exclusion of every reasonable doubt. If after hearing the evidence and the instructions of the Court, and after deliberating with your fellow jurors you believe only that the defendant is probably guilty, then you have a reasonable doubt which requires you to acquit the accused. No degree of possibility or speculation has any appropriate place in the consideration of your verdict.
The trial judge denied this requested special charge, stating that it was adequately covered by his general charge (Assignment of Error No. 5). Johnson also requested the trial judge to instruct the jury as follows:
It is incumbent on the state to prove the offense charged in the indictment to your satisfaction, beyond a reasonable doubt; and, before you can convict the accused, or either of them, you must be satisfied from the evidence that he or they are guilty beyond a reasonable doubt.
A reasonable doubt is not a mere possible doubt; it should be an actual or substantial doubt. It is such a doubt as a reasonable man would seriously entertain. It is a serious sensible doubt, but the basis for the doubt does not have to be so organized in your mind or so consciously apparent as to be capable of being verbally expressed. There need be only an abiding conviction in your mind or sense of conscience that the evidence is insufficient to convince you beyond a reasonable doubt that the accused, or either of them, are doubtless guilty of the offense with which they are charged.
The trial judge also denied this requested special charge on the basis that it was adequately covered by his general charge (Assignment of Error No. 6).
La.Code Crim.P. art. 807 provides:
The state and the defendant shall have the right before argument to submit to the court special written charges for the jury. Such charges may be received by the court in its discretion after argument has begun. The party submitting the charges shall furnish a copy of the charges to the other party when the charges are submitted to the court.
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given. (emphasis added)
In the instant case, a review of the record clearly reveals that the requested special charges submitted by Johnson were substantially included in the trial judge's general charge. Accordingly, the trial judge did not err in denying the requested special charges.
Assignments of Error Nos. 5 and 6 are without merit.

ASSIGNMENT OF ERROR NO. 3

(Johnson)
Defendant Johnson contends that the trial judge erred in denying his motion for a severance of his trial from that of his codefendants. He argues that the trial judge improperly ordered a consolidation of his indictment with other indictments without his consent.
The record reflects that some thirteen persons were charged in separate indictments in connection with the seizure of marijuana at Port Fourchon. Prior to trial, a joint motion to consolidate was filed by attorney Larry P. Boudreaux on behalf of all defendants, including defendant Johnson. The motion stated that the proposed consolidation was "for the purpose of all proceedings, including Motion to Reduce *1201 Bail, Arraignment, Pretrial Motions and Trial." The motion specifically recited that all defendants consented to said consolidation. The trial judge granted the motion and ordered the cases consolidated as requested. Thereafter, defendant Johnson, and apparently defendants Roger Goff and Joseph Fitch, retained attorney Risley C. Triche to represent them. Mr. Triche filed a motion to sever the trial of these defendants from that of the other defendants on the ground that Mr. Boudreaux had not been authorized to file the motion to consolidate on behalf of these defendants and that said defendants never consented to such a consolidation.
At a hearing on the motion to sever, Mr. Boudreaux, as well as attorney C. J. Cheramie, testified. Their testimony established that they were retained prior to trial to represent all thirteen defendants for the purpose of applying for bail reduction and other preliminary matters. Mr. Boudreaux was retained as "trial attorney or lead counsel." The attorneys discussed with all defendants the possibility of consolidation, feeling that such would be the most expeditious way to proceed. Defendants were all apprised of the implications of consolidation, including the possibility that they would be tried together. The attorneys testified that, while defendants consented to the consolidation with the understanding of a possible joint trial, they were also informed of possible later developments resulting in separate trials.
La.Code Crim.P. art. 706 provides:
Upon motion of a defendant, or of all defendants if there are more than one, the court may order two or more indictments consolidated for trial if the offenses and the defendants, if there are more than one, could have been joined in a single indictment. The procedure thereafter shall be the same as if the prosecution were under a single indictment. (emphasis added)
Thus, under article 706, the effect of the consolidation is to place all subsequent proceedings under the procedure to be followed where the prosecution is under a single joint charge. State v. Darby, 310 So.2d 547 (La.1975). Accordingly, La.Code Crim.P. art. 704 dictates the appropriate procedure to be followed here. That article provides:
Jointly indicted defendants shall be tried jointly unless:
(1) The state elects to try them separately; or
(2) The court, on motion of the defendant, and after contradictory hearing with the district attorney, is satisfied that justice requires a severance.
Thus, a defendant filing a motion for a severance must demonstrate that justice requires a severance of his charge from that of his codefendant. State v. Darby, supra.
In the instant case, the record clearly supports the trial court's finding that attorney Larry P. Boudreaux was authorized to file the motion to consolidate on behalf of the thirteen defendants involved in this matter, including defendant Johnson, and that he did so with Johnson's consent. Johnson presented no evidence to establish that justice required a severance of his trial from that of his codefendants. Hence, the trial judge did not err in denying his motion for a severance. In any event, the record reveals that Johnson, along with codefendant Joseph Fitch, were eventually tried separately from the other eleven defendants involved in this matter.
Assignment of Error No. 2 is without merit.

ASSIGNMENT OF ERROR NO. 2

(Spencer)
Defendant Spencer contends the trial judge erred in imposing an excessive sentence.
The record reflects that Spencer was sentenced to serve ten years at hard labor and to pay a fine of fifteen thousand dollars, the maximum penalty for the crime charged. At the sentencing hearing, the following evidence of mitigating factors was presented and considered by the trial judge. Spencer, at the time of sentencing, was a forty-year-old diesel mechanic and a *1202 painter by trade. Although divorced, he maintained close relationships with his three children and also with other of his relatives. Prior to this conviction, defendant had never been convicted of a felony, although he had been convicted of various misdemeanors. In brief, defendant also argues that he owns no assets and pays child support for his children and is therefore virtually a pauper. The trial judge, however, in his reasons for sentencing, concluded that, in view of the massive amount of marijuana involved in the case, i. e., approximately ten tons, "this is an extreme violation of the Louisiana Controlled Dangerous Substance Law and ... the maximum sentence should be imposed." In reaching this conclusion, the trial judge took into account other sentences he had imposed in connection with other convictions for possession with intent to distribute marijuana. The trial judge further stated for the record that he believed there was an undue risk that, during a period of suspended sentence or probation, defendant would commit another crime; that he was in need of correctional treatment and a custodial environment that could best be provided by his commitment to an institution; and that a lesser sentence would deprecate the seriousness of defendant's crime.
La.Const. art. 1, § 20 prohibits the imposition by law of excessive punishment. Accordingly, we have held that imposition of a sentence, although within the statutory limit, may violate a defendant's constitutional rights against excessive punishment that is enforceable by this court on appellate review. The trial judge's reasons in imposing sentence, as required by La. Code Crim.P. art. 894.1, are an important aid to this court when called upon to exercise its constitutional function to review a sentence complained of as excessive. State v. Gist, 369 So.2d 1339 (La.1979); State v. Sepulvado, 367 So.2d 762 (La.1979). Moreover, the trial judge is given a wide discretion in the imposition of sentences within statutory limits, and the sentence imposed by him should not be set aside as excessive in the absence of a manifest abuse of his discretion. State v. Sepulvado, supra.
In the instant case, we have carefully reviewed the trial judge's reasons for sentencing, and conclude that he did not abuse his wide discretion in imposing the maximum penalty for the offense charged, particularly in view of the extremely large amount of contraband involved.
Assignment of Error No. 2 is without merit.

ASSIGNMENTS OF ERROR NOS. 3 AND 4

(Spencer)
Defendant Spencer contends that the evidence presented by the state was insufficient to establish his guilt beyond a reasonable doubt. It is well settled that in a jury trial the proper procedural vehicle for preserving this issue for appellate review is a motion for a new trial. This was a jury trial. Spencer filed no motion for a new trial. Hence, this issue was not properly preserved for our review. State v. Sandifer, 359 So.2d 990 (La.1978); State v. Proctor, 354 So.2d 488 (La.1977); State v. Williams, 354 So.2d 152 (La.1977); State v. Cobbs, 350 So.2d 168 (La.1977); State v. Blackstone, 347 So.2d 193 (La.1977).
In any event, this contention is without substance because the record reflects ample evidence to prove that Spencer was guilty of the crime charged. State witness Jerry Trent, one of the participants in the crime charged, identified Spencer as the driver of the larger truck involved in the smuggling scheme and further stated that Spencer had helped to load that truck with the bales of marijuana obtained from the vessel YUCATAN. Moreover, a customs officer and a state trooper testified that on the night of May 26, 1978 (date of incident), they stopped and detained three persons running away from the YUCATAN. Both officers identified Spencer as one of these three persons. Furthermore, the state trooper testified that at that time Spencer appeared to have been engaged in manual labor since he was in a "sweaty," "dishevelled," and "dirty" condition, "like he had been working."
*1203 Assignments of Error Nos. 3 and 4 are without merit.

ASSIGNMENTS OF ERROR NOS. 5 AND 6

(Spencer)
Defendant Spencer contends the trial judge erred in refusing to permit him to cross-examine a state witness concerning the arrests and dismissals of charges against other persons allegedly involved in this matter and in refusing to allow him to comment on said dismissals during closing argument. He argues that evidence of these dismissals was relevant to his defense.
During cross-examination of Customs Patrol Officer Buddy Jack Harrison, defendant attempted to question the witness as to two other persons arrested along with Spencer. Defendant asked the witness whether he was aware that charges against Marandon Rousse had been dropped. The witness responded in the negative. He then asked the witness if he knew that Rousse had been arrested with Spencer. The state objected to any questioning concerning "what happened to the charges against other people" as being "inadmissible and irrelevant." The objection was overruled as coming too late. Defendant then asked the witness whether he knew if any charges had been brought against a Mr. Smith who had also been arrested. The witness again responded in the negative. The state objected on the same ground as previously. This time, the objection was sustained by the trial judge (Assignment of Error No. 5). During closing argument, defendant attempted to return to the subject of dismissals of charges against others, stating that "[a]pproximately fourteen or fifteen people were arrested at [the] scene. Several of those people, at least three, had no involvement whatsoever in the operation." State objected. Trial judge sustained the objection, stating that "there is no evidence in this record as to what has happened to any other people who were arrested and/or charged and nolle prossed. Further, I am not even sure that would be relevant to these proceedings anyway. We are here to try Mr. Spencer. We are not here to try other persons who may or may not have been convicted or charged" (Assignment of Error No. 6).
La.R.S. 15:435 requires that "[t]he evidence must be relevant to the material issue." La.R.S. 15:441 further provides that "[r]elevant evidence is that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent." We have held that the trial judge is vested with a wide discretion in determining the relevancy of evidence, and his ruling will not be disturbed on appeal in the absence of a clear showing of abuse of discretion. State v. King, 355 So.2d 1305 (La.1978).
Finally, La.Code Crim.P. art. 774 provides in pertinent part that "[t]he argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case."
In the instant case, we conclude that the trial judge did not err in sustaining the state's objection to defense questioning designed to elicit evidence of the dismissal of charges against other persons. Evidence of the state's failure to prosecute other persons arrested along with Spencer, for whatever reason, has no bearing on whether or not defendant is guilty or innocent of the crime charged. Neither did the trial judge err in refusing to allow defense counsel to comment during his closing argument on said dismissals, since evidence of them was properly excluded during trial. See State v. Vaughn, 44 La.Ann. 814, 11 So. 40 (1892). Assignments of Error Nos. 5 and 6 are without merit.

DECREE
For the reasons assigned, defendants' convictions and sentences are affirmed.
NOTES
[1] Defendant Johnson has neither briefed nor argued Assignment of Error No. 2; hence, we consider it to have been abandoned. State v. Blanton, 325 So.2d 586 (La. 1976); State v. Carlisle, 315 So.2d 675 (La. 1975). Moreover, in his brief to this court, defendant Johnson expressly abandoned Assignment of Error No. 4.
[2] In fact, the record reveals that this information was established through police surveillance of the area.
[3] Moreover, on the evening of May 25, police surveillance indicated "unusual activity" in the area of the Lion's Den, owned by Jack Nichols, in that there were many cars and people moving in and out of that area.
[4] Furthermore, the record establishes that at this time the motors of the two trucks were running.