397 So.2d 1319 (1981)
STATE of Louisiana
v.
Doug RUSSELL and Oscar Prock.
No. 80-KA-2142.
Supreme Court of Louisiana.
April 6, 1981.
Rehearings Denied May 18, 1981.
*1321 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Abbott J. Reeves, William W. Hall, Kenneth Sanders, Asst. Dist. Attys., for plaintiff-appellee.
W. Glenn Burns, Stephen B. Murray, Murray, Murray, Ellis, Braden & Landry, James H. Looney, New Orleans, for defendants-appellants.
CHEHARDY, Justice Ad Hoc.[1]
Defendants, Doug Russell and Oscar Prock, and four others were charged by bill of information on April 13, 1978, with receiving stolen things, a violation of La.R.S. 14:69. Though the bill of information charged five counts, these defendants were charged only with count number one. Defendants were tried jointly before the judge alone and were found guilty as charged on May 15, 1979. On May 23, 1979, defendant Prock was sentenced to imprisonment at hard labor for a term of six years. Defendant Russell was sentenced on June 7, 1979, to three and one-half years at hard labor. Russell appeals his conviction on the basis of five assignments of error and Prock his conviction and sentence on eight assigned errors.
Defendants were arrested after they participated in a "sting" operation conducted in Jefferson Parish. The defendants participated in the "sale" of a Ford dump truck and a Case bulldozer to undercover agents on August 24, 1977. The owner of the dump truck was called and testified that the truck "sold" by the defendants to the undercover agents was positively his and had been stolen from his place of business in Nashville, Tennessee, in August of 1977.
Detective John Morse of the New Orleans Police Department, and a member of the Metropolitan Crime Strike Force conducting the undercover fencing operation in a Jefferson Parish, Louisiana, warehouse, expressed a willingness to purchase the Ford dump truck and Case bulldozer, after being advised of their availability for sale.
The record discloses that subsequently on August 24, 1977, defendant Doug Russell arrived by air in Jefferson Parish and was met by Detective Morse. Officer Morse testified that he had been contacted by unnamed individuals in Tennessee to meet the defendant Russell and take him to the "store" to negotiate the sale. Russell and Morse than drove to a gravel lot near Causeway Boulevard and met defendant Prock and other individuals who had the truck with the bulldozer on its bed. All the men then went to the Jefferson Parish warehouse where the strike force was conducting its undercover fencing operation. Eventually defendants agreed to sell the truck and bulldozer for $4,500.00 and the sale was consummated. All five defendants were present at this sale of the property.
Officer Morse also testified that prior to the day of the sale, he had spoken to one of the men involved and learned that they were afraid to cross the Louisiana/Mississippi state line with the truck and bulldozer. After making arrangements with the Mississippi and Louisiana State Police, the witness contacted one of the men and assured them that a bribe of weigh station attendants would allow them to make the crossing safely. All the transactions at the warehouse in the phony store were recorded on video tape and were introduced at trial. The defendants did not take the stand and presented no evidence on their behalf.
Defendant Russell by assignment of errors numbers one and two and defendant Prock by assignment of errors numbers one and six argues that the trial court committed error in denying their motion to quash *1322 based on alleged lack of jurisdiction and venue. Defendants contend that, as required by La.R.S. 14:69, they never procured, received or concealed anything in Jefferson Parish and argue in support of this contention that the record reveals the truck and bulldozer were stolen in Tennessee and procured there without receipt or concealment of either vehicle in Jefferson.
La.R.S. 14:69 provides in pertinent part:
"Receiving stolen things is the intentional procuring, receiving, or concealing of anything of value which has been the subject of any robbery or theft, under circumstances which indicate that the offender knew or had good reason to believe that the thing was the subject of one of these offenses."
In State v. Crum, 255 La. 60, 229 So.2d 700 (1969), the Court re-examined its decision in State v. Ellerbe, 217 La. 639, 47 So.2d 30 (1950), and clarified the definition of concealment given in that case. Noting one of the cases cited in Ellerbe, the Court stated that the word "conceal" is not to be given its literal construction limited to hiding. It further explained that concealment may be found where the stolen property was handled in such a manner that would throw the owner off his guard in his search for it:
"A determination of whether stolen property is concealed depends upon the facts of the particular case as they affect the ability of the owner to search for and find it. `Concealing' such property includes hiding, secreting, and keeping it from sight, but also includes conduct which will assist the possessor in converting the property to his own use and enjoyment or which may prevent or hinder its discovery by the owner. See 45 Am. Jur., Receiving Stolen Property, § 3; 76 C.J.S. Receiving Stolen Goods § 7; 2 Brill, Cyclopedia of Criminal Law, § 921; 2 Wharton's Criminal Law and Procedure, § 570 (Anderson's ed.). The commingling of a stolen automobile with other vehicles on the public thoroughfares of a city foreign to and removed from the owner is an effective hinderance to the owner's discovery of it." 229 So.2d at 701.
It was then concluded that the removal of the stolen automobile in that case from Mississippi to Louisiana, and particularly to populous New Orleans, and its use for the defendants' own benefit and purposes "were calculated to hinder or prevent the owner's discovery and recovery of it, and constituted `concealing' within the statute."
In the instant case, the record reveals that the dump truck, stolen in Tennessee, was transported interstate to Louisiana and brought to Jefferson Parish. While there was no evidence that the truck was hidden or otherwise concealed from public view, it can be seen as in State v. Crum, supra, that the defendants handled the truck in such a way as to assist in the conversion of it to their own use and, especially in light of evidence that they performed some alterations on the vehicle, hindered its discovery by its real owner. Since this concealment clearly occurred in Jefferson Parish, prosecution of this charge in that parish is correct. Accordingly, the trial judge's denial of the motions to quash and motions for acquittal is proper and this assignment is without merit.
Defendant Russell by assignment of error number three and defendant Prock by assignment of error number four assert that the trial court erred in denying their motions for acquittal which had been based on an allegation of insufficiency of evidence as to essential elements of the offense.
Defendants urge that there was no evidence the property involved was stolen or that they were aware of its being stolen. Defendants also assert that since the bill of information describes a 1977 Ford dump truck, and the one "sold" to the agents was a 1974 model, the state failed to prove that they had committed the charged offense. However as noted, the truck's owner positively identified the truck "bought" from the defendants as his own. This error as to dates would not void defendants' conviction since it worked no prejudice on the defendants. Clearly, the bill of information adequately informed both of the accused so *1323 that their preparation of a defense was not hindered. At trial, as noted, the owner of the dump truck that was "sold" to the undercover agents positively identified it as the one stolen from him in Tennessee. There was, however, no similar testimony regarding the bulldozer, but that vehicle was also involved in the sale, accounted for part of the purchase price, and was resting on the bed of the dump truck. At trial, New Orleans Police Officer John Morse testified that were both vehicles had been reported stolen, were on the "stolen list" and that they were both later recovered by their rightful owners. This witness also testified regarding negotiations with the defendants about the sale of the property including their telling him that they were afraid to bring the vehicles into the state for fear of being caught with stolen goods. Officer Morse related the conversations with the defendants about avoiding the weigh stations and, once the property arrived in Jefferson Parish, the lengthy negotiations for its sale. The officer testified that the defendants agreed to sell the merchandise for drastically below its market value and had threatened to blow it up if they did not get as much as they wanted.
The standard used in reviewing the sufficiency of evidence as enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the defendant is guilty. State v. Morgan, 389 So.2d 364 (La.1980); State v. Harveston, 389 So.2d 63 (La.1980); State v. Hartman, 388 So.2d 688 (La.1980). The evidence presented to the court in the instant case, seen in the light most favorable to the prosecution, is adequate under Jackson, supra, to justify the trial judge's conclusion beyond a reasonable doubt that the truck and bulldozer were stolen and that the defendants knew of that fact.
In State v. Walker, 350 So.2d 176 (La. 1977), this Court in analyzing the defendant's conviction for receiving stolen things for sufficiency of evidence of essential elements noted that proof of possession, receipt or concealment does not alone suffice to constitute the offense. Also, the Court determined that mere possession of stolen property does not create a presumption that the person in possession of it received it with the knowledge that it was stolen by someone else. While the Court found the evidence in State v. Walker, supra, inadequate, the instant case is distinguishable since the defendants here not only were in possession of the property but also attempted to conceal it, transport it interstate, alter it and sell it far below its value.
This assignment is without merit.
Defendant Prock urges that the trial court erred in granting the state's oral motion for a continuance in his assignment of error number two. According to the trial minutes, on May 14, 1979, the day trial was apparently scheduled to begin, the district attorney requested and was granted a continuance. Objections by counsel were noted, and trial was reset for May 18, 1979. A copy of the transcript of the proceeding held on May 14, 1979 is not provided in the record. The defendant alleges that since the motion was oral it should not have been granted under La.C.Cr.P. Art. 707, which provides:
"A motion for a continuance shall be in writing and shall allege specifically the grounds upon which it is based, and when made by a defendant, must be verified by his or his counsel's affidavit. It may be filed at any time prior to the commencement of trial."
Defendant argues that since there was no written motion, the continuance was improperly granted and was error. He also insists that since the statute was explicitly violated there was no need to show prejudice, but that in any event prejudice did result because of the expensive imposition of having to wait four days for trial.
In State v. Parsley, 369 So.2d 1292, 1294, n. 1 (La.1979), this Court noted:
"We are aware that La.Code Crim.P. art. 707 provides that an application for a continuance shall be by written motion *1324 whereas, here, the motion was oral. However, due to the fact that the occurrences that allegedly made the continuance necessary arose unexpectedly, defense counsel had no opportunity to prepare a written motion. Moreover, the record reflects that the trial judge was fully aware of the grounds upon which defendant's motion was based and ruled thereon. Under the circumstances, we consider that the trial judge's denial of defendant's motion for a continuance is before us for review."
The same rationale should apply to this situation where the state made the oral motion.
A per curiam prepared by a district court judge, other than the trial judge, asserts that the continuance was justified because:
"* * * [I]t is common procedure in this jurisdiction to set the entire criminal docket for the Monday of each week and select a day within that week for the trial of the matter. The record reflects that the trial was continued from Monday to Thursday. Surely, a four day continuance cannot be deemed to be an abuse of the discretion vested in the trial court. * * *"
This Court has consistently held that the granting of a motion for a continuance is a matter committed to the trial judge's discretion and that a denial of the motion will not be reversed unless an abuse of discretion is demonstrated. State v. Parsley, supra; State v. Benson, 368 So.2d 716 (La. 1979); State v. Hammontree, 363 So.2d 1364 (La.1978); State v. Johnson, 343 So.2d 155 (La.1977).
The defendant has failed to demonstrate any more prejudice to his defense than the cost of several days' wait incurred by him before the new trial date, and according to Prock's counsel in their assignment of this error:
"The Trial Judge informed the defendants that he had been informed by the assistant district attorney who would be trying the case the prior week that this case was being postponed until May 18. The purpose was to facilitate the state, who needed to bring in the victim from Tennessee. Such a trial setting would allow the state to fly in the witness for one day, rather than having to risk housing him for several days."
Continuing their argument in support of this assignment of error attorneys for defendant also state:
"The Court and the district attorney were well aware that the defendants had sought and received permission to leave the jurisdiction to return home to await the trial. * * * The defendant Russell had waived his presence for the pretrial hearings, appearing only through counsel. Thus the defendants were forced to either stay in town for four days or return home to make the trip again in four days. Either option was an expensive imposition on the defendants, presumed innocent at the time."
Since the decision of whether or not the granting of a continuance is justified is dependent upon the reasonableness of the trial judge's use of discretion and considering the failure of defendant to show any abuse of that discretion or prejudice to defendant's defense we find this assignment of error to be without merit.
By assignment of error number five defendant Prock asserts that the trial court erred in failing to quash a defective bill of information.
Defendant asserts that the bill of information charging him did not contain the phrase "contrary to the law of Louisiana and against the peace and dignity of the same." Review of the record indicates that the phrase in question, as well as the spaces for the complaint number and district attorney's signature, were obliterated on the first page of the five-count information, but were retyped on the second page after the final count. Even if the phrase had been completely omitted, the official revision comments to Articles 463 and 462 state that such an omission, a formal defect, is waived if not raised at the arraignment by a motion to quash. The record shows no such motion was made by this defendant. Accordingly, this assignment lacks merit.
*1325 By assignment of error number seven defendant Prock asserts that the sentence imposed on him was excessive. On May 23, 1979, defendant was sentenced by the trial judge to six years at hard labor; a maximum of ten years was possible.
Defendant asserts in brief that his allegedly excessive sentence is a violation of La.Const. Art. I, § 20, which prohibits the imposition of excessive punishment. This Court has held that imposition of a sentence, though within statutory limits, may in fact violate a defendant's constitutional rights against excessive punishment that is enforceable by this Court on appellate review. State v. Spencer, 374 So.2d 1195 (La.1979). However, the trial judge has wide discretion in the imposition of sentences, given compliance with La.C.Cr.P. art. 894.1, and sentences imposed will not be set aside in the absence of manifest abuse of discretion. State v. Molinario, 383 So.2d 345 (La.1980); State v. Spencer, supra; State v. Gist, 369 So.2d 1339 (La.1979).
Before pronouncing sentence, the trial judge stated his awareness of defendant's prior record and then stated:
"Despite this, you became involved in what you knew to be a car theft. I frankly don't understand it, why you did it. I don't know whether you do or not.
"The Court feels that you must pay a penalty for your involvement. You knew you were stealing things that belonged to somebody else, that they worked for.
"You're not a candidate for probation, anyway, under our law since you have a prior felony conviction. However, I would not give you probation anyway under the circumstances."
The defendant was then sentenced. There was no explicit application of the sentencing guidelines of La.C.Cr.P. art. 894.1, either the aggravating or mitigating factors.
The trial judge's reasons for imposing sentence as required by Article 894.1 are an essential aid to this Court when reviewing a sentence for excessiveness and abuse of discretion.
In the instant case, though there was no specific application of Article 894.1, the trial judge was aware of defendant's prior record. This knowledge was implicit in his finding that there was an undue risk of defendant's further criminal activity and the need for a continued correctional environment. The judge further found that a lesser sentence would deprecate the seriousness of the offense. We do not find that there has been an inadequate particularization of the defendant's sentence to his crime and therefore a remand for resentencing is not warranted. We reach this conclusion with awareness of what this Court determined in State v. Cox, 369 So.2d 118, 121 (La.1979), that it "* * * may vacate a sentence and remand for re-sentencing, when the reasons for an apparently severe sentence in relation to the particular offender and the actual offense committed do not appear in the record." (Emphasis supplied.) Moreover, this Court has held that a sentence is excessive and unconstitutional if it is grossly out of proportion to the crime or it is nothing more than the needless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980); State v. Goode, 380 So.2d 1361 (La.1980). In the instant case the sentence is neither severe nor grossly out of proportion to the crime.
This assignment is without merit. Lastly we consider defendant Russell's assignment of error number four that the court erred when it sentenced defendant Russell to three and one-half years imprisonment at hard labor.
Defendant Russell contends that the trial judge did not state for the record, as required by La.C.Cr.P. art. 894.1, the underlying factual basis for the considerations used in imposing sentence. We do not agree with defendant that his role was that of a bystanderdespite which of the five defendants, all participants in the negotiation for sale of the stolen property, actually handled the negotiation. Nor do we agree that the seriousness of this crime, as contended by defendant, is debatable.
*1326 Based on all of the evidence in the record, the trial judge in sentencing Russell made the following statement:
"Mr. Russell, you came up yesterday for sentencing, as you are aware, and I postponed it simply because I had not come to a decision. I have come to a decision in the matter now. I cannot suspend your sentence. It appears to the Court that your principal regret is that you were caught and there can be no doubt in the Court's mind, after the trial, of your participation in the crime with which you are charged and stand convicted. The evidence was clear and overwhelming from a factual standpoint. I realize that you have a legal defense that you are urging, which you have a perfect right to do. Nonetheless, the Court feels that your principal regret is having been caught in connection with this. You were a central figure involved in this particular thing, as was revealed by the evidence, the obvious purpose of negotiating that which you knew to be stolen. There were sizeable sums of money involved in the cost of the vehicles which were being stolen from the rightful owners and transported down here. It's a very serious crime. I know the people that get hurt the worst in connection with this sort of thing are the people who are not involved, your family and others. Considering the seriousness of the crime, all of the other circumstances that I have stated, I cannot suspend your sentence. I'm going to sentence you to serve three and a half years at hard labor and will remand you to the Department of Corrections for the imposition of that sentence."
The sentence of defendant Russell is neither severe nor grossly out of proportion to the crime and it certainly is not a needless imposition of pain and suffering. This assignment is without merit.
For the foregoing reasons, the conviction and sentence of Oscar Prock and the conviction and sentence of Doug Russell are affirmed.
NOTES
[1] Judges Garrison, Chehardy, and Barry of the Court of Appeal, Fourth Circuit, participated in this decision as associate justices ad hoc, joined by Associate Justices Calogero, Marcus, Blanche and Lemmon.