KLIEBERT, Judge.
Marilyn Rutecki was charged by bill of indictment with the second degree murder of her infant son, baby boy Rutecki, in violation of R.S. 14:30.1. On March 30, 1983 she entered a plea of not guilty. Pretrial motions were heard on June 8, 1983, and an application for supervisory relief was made to this court challenging several rulings of the trial court. The writ was granted in part and denied in part by a panel of this court on November 23, 1983. Further supervisory relief was then sought with the Louisiana Supreme Court which denied the defendant’s writ application on December 13, 1983. 442 So.2d 483.
On May 9, 1984, the defendant entered a nolo contendere plea to the charge of negligent homicide. As a condition of the plea, it was agreed that a one (1) year sentence in the parish prison would be imposed and that such sentence could be appealed as being excessive. A pre-sentence investigation was ordered by the trial judge and formal sentencing was deferred until its completion. On June 13, 1984, the trial court sentenced Ms. Rutecki to two (2) years in the custody of the Department of Corrections. The execution of the sentence was suspended and the defendant was placed on inactive probation for two (2) years and, as a condition of probation, Ms. Rutecki was ordered to serve one (1) year in Parish Prison. It is from this conviction and sentence the defendant appeals.
The relevant facts are as follows: Shortly after midnight on June 29, 1982, defendant, Marilyn Rutecki unexpectedly gave birth to a male child while she was seated on her bathroom commode at her Metairie residence. Ms. Rutecki, a longtime sufferer from dysmenorrhea (a syndrome characterized by infrequent and irregular menstruation) and also obese, had been unaware of her pregnancy and had mistaken the progressively excruciating pains and cramps she had been experiencing the previous day as the long-delayed arrival of her menstrual period. As midnight approached, however, and the pain and suffering became unbearable, and frightened by heavy bleeding, she decided to go to the hospital and, at midnight, phoned her mother, who lived nearby, to take her to the hospital. Defendant’s mother, Mrs. Ryan, arrived at defendant’s residence just about the time the defendant, who had gone to the bathroom expecting a bowel movement, gave birth. Mrs. Ryan admitted herself to the residence and found her bloody, hysterical daughter, who exclaimed that she had just had a baby. Mrs. Ryan looked at the baby lying in the toilet bowl and told her daughter that the baby appeared to be dead. Mrs. Ryan then assisted her daughter in cleaning herself and then took her to the hospital. The hospital personnel in the emergency and admissions area(s), upon learning this history, contacted the Jefferson Parish Sheriff’s Office to dispatch an officer to defendant’s residence to retrieve the fetus. Deputy Joe Heard went to the residence, observed the baby in the toilet, summoned an ambulance, and then secured the residence pending arrival of the ambulance. The emergency ambulance arrived and the emergency technicians entered the house. After viewing the infant in the toilet and observing no signs of life, the emergency technicians departed. Pictures and items for evidence and/or analysis were then taken and collected from the residence. Eventually the Coroner’s Unit arrived and took possession of the fetus. The following day, the Coroner’s autopsy report concluded that the cause of the in *1007 fant’s death was asphyxiation secondary to drowning.
On June 30, 1982, a search warrant for defendant’s residence was obtained and pursuant thereto, a search of the premises was made and several items seized.
On August 25, 1982, following interrogation at the detective bureau in Gretna, the defendant signed a seven page written statement. After completion of the interrogation and signing of the written statement, the defendant was formally arrested for the second degree murder of her infant.
Subsequently, Ms. Rutecki was charged by grand jury indictment with the negligent homicide of the infant. Following arraignment and pre-trial motions, the matter was again brought to the grand jury who then returned a bill of indictment charging the defendant with second degree murder.
On appeal, the defendant urges two assignments of error, those being:
(1) the trial court failed to sentence the defendant in accordance with the sentencing guidelines set out in Article 894.1 of the Code of Criminal Procedure, and
(2) the trial court committed reversible error in imposing an excessive sentence.
The trial court’s failure to comply with Article 894.1 does not, in and of itself, render a sentence invalid. State v. Smith, 430 So.2d 31, 46 (La.1983). In State v. Dirden, 430 So.2d 798 (La.App. 5th Cir.1983), we stated:
“As we understand Code of Criminal Procedure Article 894.1, it is, as its heading denotes, a Sentence Guideline for general application in imposing a sentence under the penalty provisions of the violated statutes where the statute gives to the court a discretion in type or extent of the punishment to be imposed. Under Part A of the article, a finding that either Part 894.1A(1), (2) or (3) applies, is not only sufficient justification for imprisonment; but, in addition, under the wording of the statute, a legislative mandate to imprison a convicted defendant. Further, although not controlling, under Article 894.1 B, the trial judge is required to give weight to the eleven criteria set out in Part B of the article in determining whether the sentence should be suspended and the convicted defendant placed on probation.
⅜{ ⅜ ⅜ JjS !⅜ ⅜
Where, ... there is sufficient illumination of the record to demonstrate the trial judge was not arbitrary in imposing the sentence, and considered the nature of the offense, the character of the offender and the need for protection of the public interest, it is not necessary to set aside the sentence and remand the case for re-sentencing. Only where the convicted defendant points out the existence of specific mitigating factors, such as, those enumerated in Part B of the article, and the trial judge has failed to consider or give weight to those specific factors, and his failure to do so may have resulted in the imposition of an excessive sentence, is it necessary to set aside the sentence and remand the case for resen-tencing. ...”
In articulating his reasons for sentencing, the trial court in this case stated:
In connection with this matter, I have received the pre-sentence report, which you have already read, which considers the victim of this offense was a newborn baby, the recommendation to the Court was a year in Parish Prison and that a lesser sentence would deprecate the seriousness of the crime. Now, I am appreciative of the situation we have. There has never been a situation where good people are involved that it does not have an effect. Even when we have bad people, it does have an effect. I just sentenced Mr. Brown to a very serious sentence, and I am sure the people in his family will be affected by that sentence. He has people that love him, I am sure. In connection with this matter, the Court feels, that considering the particular offense in this matter, that a child was born, that the mother knew that the child was born, did nothing to help that child *1008 and that the child would have lived had it been cared for and had it not drowned. It is a henious offense in the mind of the Court. While I do not believe a great sentence of years and years would solve any problem in connection with this matter, I will simply say: you let a child die and you did not do anything about it. It is clearly wrong in my mind. I hoped not to go through with this because you put me in a position, Mr. Barry, I must say, this is a henious crime, a terrible crime, and to allow an unborn child to drown in a toilet is a shame, a serious shame. I do not believe, to give her probation is in any way called for. In connection with this matter, for that reason, for the reason outlined in this thing and in order to conform with the artificial amount of things that we have to put in the record that are required, I am reading from 894.1: The defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by her commitment to an institution and that a lesser sentence will deprecate the seriousness of the defendant’s crime. You have killed a newborn baby. You let that newborn baby die. This particular lady got up from her position on the toilet and let that baby there and went and laid down, allowed that baby to drown. I think this is a particularly henious crime and I think my sentence in connection with this matter is very, very light under the circumstances.”
We conclude that the trial judge did follow the guidelines in particularizing the sentence to the defendant.
Next we turn to the issue of excessive sentence.
Trial judges are granted great discretion in imposing sentences, but even sentences within statutory limits may be excessive under certain circumstances. State v. Jones, 398 So.2d 1049 (La.1981); State v. Spencer, 374 So.2d 1195 (La.1979).
The penalty for a violation of La.R.S. 14:32 (negligent homicide) is imprisonment with or without hard labor for not more than five (5) years, a fine of not more than five thousand dollars, or both.
In evaluating an excessive claim, a reviewing court examines the reasons set forth by the sentencing court to determine whether there has been a manifest abuse of discretion which would warrant a setting aside of the sentence. State v. Fleming, 428 So.2d 947 (La.App. 1st Cir.1983); State v. Willis, 420 So.2d 962 (La.1982).
It is not the function of a reviewing court to substitute its judgment for that of the trial court, but rather to determine if the lower court abused its broad sentencing discretion. State v. Murdock, 416 So.2d 103 (La.1982); State v. Honore, 451 So.2d 77 (La.App. 5th Cir.1984); State v. Berthelot, 449 So.2d 692 (La.App. 5th Cir.1984).
In imposing the one (1) year sentence of imprisonment as a condition of probation, the trial court took cognizance of the serious nature of the offense and noted that the defendant intentionally failed to take any affirmative steps to insure her baby’s survival. In mitigation, he considered the emotional hardship to Ms. Rutecki and her teenage son which would be the result of the period of incarceration.
From the record, we conclude that the trial judge imposed the sentence only after serious reflection as to its consequences, and that the sentence was not so disproportionate to the offense to be deemed excessive, and that the trial court did not abuse his discretion in imposing the sentence and therefore, we affirm the conviction and sentence.
AFFIRMED.