511 So.2d 1255 (1987)
STATE of Louisiana, Appellee,
v.
Meshell BUFFIN, Appellant.
No. 18846-KA.
Court of Appeal of Louisiana, Second Circuit.
August 19, 1987.
Miciotto, Simonton & Blanchard by Wayne J. Blanchard, Shreveport, for appellant.
*1256 William J. Guste, Jr., Atty. Gen., Barbara B. Rutledge, Asst. Atty. Gen., Baton Rouge, Paul J. Carmouche, Dist. Atty., A.M. Stroud, Catherine M. Estopinal, Asst. Dist. Attys., Shreveport, for appellee.
Before MARVIN, SEXTON and LINDSAY, JJ.
PER CURIAM.
The defendant, Meshell Buffin, age 20, was originally charged by grand jury indictment with second degree murder for the killing of her newborn infant daughter on October 23, 1985. Pursuant to negotiations between the defendant's retained counsel and the state of Louisiana, the defendant pled guilty to a bill of information charging her with negligent homicide and was sentenced to two years at hard labor. Negligent homicide is punishable by a maximum fine of $5,000 and a jail term of not more than five years, with or without hard labor. The defendant appeals, contending that the trial court erred in imposing an excessive sentence. Finding no abuse of discretion in the imposition of this sentence, we affirm.
The record before this court, which includes a lengthy sentencing hearing with numerous witnesses appearing for the defendant, reveals the following facts. On October 23, 1985, the defendant gave birth to a child at home. Ms. Buffin resided at the residence of her parents. She was not married at the time and had never been married. The defendant appeared at the LSU Medical Center seeking medical treatment, accompanied by one of her sisters. Medical personnel at the hospital notified law enforcement authorities that she had arrived at the hospital with manifest signs of having given birth but that the baby could not be located. The defendant steadfastly denied having been pregnant or having any knowledge of a baby. After police investigators questioned the family about the location of the baby, it was "discovered" in the garbage can in the defendant's room at her home and brought by the defendant's boyfriend to the LSU Medical Center. It was declared dead on arrival at the Medical Center.
The coroner's autopsy showed that the baby had been born alive, evidenced by its inflated lungs, and had died from head injuries. The coroner could not definitively state whether the injuries to the child's head occurred as a result of the child's head striking something, or from a moving object striking the child's head. The infant's body had been partially burned, and material found with the body (pine straw and leaves) indicated that the body had been outside the residence. The Buffin family had a "burning barrel" outside their residence and material around that barrel was consistent with the pine straw and leaves found on the body. The baby was dead prior to the burning. Significantly, the pre-sentence investigation indicates that the portion of the umbilical cord found protruding from the defendant's vagina had been cut by a sharp instrument such as scissors or a sharp knife.
Although the defendant denied any knowledge of the birth of the baby, she admitted to the probation and parole officer conducting the pre-sentence investigation that she had seen the baby in the commode at its birth, a statement she recanted at sentencing. Various character witnesses testified for the defendant at the sentencing hearing. Additionally, a psychiatrist testified that Ms. Buffin's alleged amnesia of the event was consistent with her personality. However, this psychiatrist conceded that there was no way to be certain that Ms. Buffin had no recall of the event. He testified that psychogenic amnesia, the loss of memory without any proof of organic cause, would not have affected her ability to distinguish right from wrong as defined by Louisiana law.
The facts adduced at the sentencing hearing support the following statement at sentencing by the trial judge:
I am not convinced, however, that she did not know she had a child and if she knew she had a child she had a responsibility to do something to keep it from dying. To fail to take care of it is criminal negligence and therefore the crime of negligent homicide.
*1257 No claim is made that the trial court failed to articulate sentencing considerations under LSA-C.Cr.P. Art. 894.1. In considering a claim of excessiveness of sentence, a reviewing court must determine whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant. A sentence violates LSA-Const. Art. 1, § 20 (1974) if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it is so disproportionate as to shock the sense of justice. State v. Lewis, 430 So.2d 1286 (La.App. 1st Cir.1983), writ denied 435 So.2d 433 (La. 1983). The trial judge has wide discretion in the imposition of a sentence within the statutory limits and such a sentence should not be set aside as excessive absent a manifest abuse of discretion. State v. Nelson, 449 So.2d 161 (La.App. 4th Cir.1984); State v. Hammonds, 434 So.2d 452 (La.App.2d Cir.1983), writ denied 439 So.2d 1074 (La. 1983).
A trial court is not required to render a suspended sentence or probation on a first felony offense. The judge may consider whatever factors and evidence he deems important to a determination of the best interest of the public and the defendant. State v. McKethan, 459 So.2d 72 (La. App.2d Cir.1984); State v. Tully, 430 So.2d 124 (La.App.2d Cir.1983), writ denied 435 So.2d 438 (La.1983). A plea bargain which brings about substantial benefits to a defendant is a legitimate consideration in sentencing. State v. Winzer, 465 So.2d 817 (La.App.2d Cir.1985).
Despite the mitigating factors present in this case, the record supports the trial court's conclusion that a lesser sentence would deprecate the seriousness of the crime committed by the defendant. Additionally, the record supports an inference that the defendant has derived a substantial benefit by the reduction of the instant charge to negligent homicide from second degree murder, which carries a mandatory term of life imprisonment without benefit of parole. The only cases which we have located which we find factually comparable to the instant situation are State v. Rutecki, 469 So.2d 1005 (La.App. 5th Cir. 1985), writ denied 476 So.2d 348 (La.1985); State v. Williams, 497 So.2d 333 (La. App.2d Cir.1986) writ denied 499 So.2d 81 (La.1987).
In Rutecki, supra, a newborn infant, born while the mother was on the commode, died as a result of drowning. The defendant was apparently so obese that the birth of the child came as a complete surprise, and she failed to retrieve the infant from the toilet, causing its death. The defendant had a 15 year old son, who would presumably suffer hardship from the imprisonment of his mother. The defendant pled nolo contendere to negligent homicide, a plea bargained reduction from the original charge of second degree murder. Rutecki received a two year hard labor suspended sentence, conditioned upon serving one year in the parish prison. This sentence was affirmed as not excessive.
In Williams, supra, the defendant's sentence of four years at hard labor was affirmed. The defendant had left her one year old child, unattended, in a bathtub. The child died from the combined effects of scalding and drowning after hot water filled the tub.
We conclude that, despite the defendant's history of employment, exemplary conduct in school, and lack of criminality, we cannot disagree with the trial court that the seriousness of the crime she committed outweighs the mitigating factors. We thus further cannot conclude under the instant circumstances that the trial court abused its discretion by imposing a sentence of less than half of that possible for negligent homicide. Accordingly, the defendant's sentence is affirmed.
AFFIRMED.