CUTRER, Judge.
The defendant, Patrick Joyner, was convicted by a jury of illegal possession of cocaine in violation of LSA-R.S. 40:967(C)(2). He was subsequently sentenced to serve three years at hard labor at the Louisiana Department of Corrections; credit was given for time served in jail by the defendant pending his trial. Additionally, the defendant was sentenced to the payment of a $2,500.00 fine plus court costs or, in default of payment thereof, to an additional imprisonment term of one year.
Prior to defendant’s trial, he filed a motion to suppress the cocaine seized by the sheriff’s deputies without a warrant.[1] This motion was denied by the trial judge who found that the seizure was the result of a valid “inventory search” by the officers. Defendant appeals his conviction, raising as his sole assignment of error the trial judge’s denial of his motion to suppress the incriminating contraband.
The only question raised by this appeal is whether a valid inventory search occurred. For the reasons to follow, we answer this question affirmatively.
FACTS
At approximately 10:30 P.M., on November 1, 1982, the defendant was stopped and ticketed for speeding on U.S. Highway 171 in Beauregard Parish. The issuing officer, Deputy Mickey Cooley, had clocked (by the use of radar) the defendant’s vehicle at 89 miles per hour in a 55 miles per hour zone. However, upon hearing the defendant’s excuse that he was hurrying home to Texas to be with his wife who was experiencing health problems with her pregnancy, the deputy wrote the ticket to indicate that the defendant had been traveling only 80 miles per hour. Since individuals ticketed in Beauregard Parish, for traveling 85 miles per hour or faster, are required to be incarcerated until the posting of sufficient bond, Deputy Cooley’s lenience allowed the defendant to continue his journey.
Shortly after the initial ticketing, the defendant was once again stopped by a Beauregard Parish Sheriff’s Deputy, Glen Mears, who also radar-timed defendant’s speed as being 89 miles per hour. At this time the defendant was arrested. The vehicle he had been driving was a rental car from Texas, and the defendant was the sole occupant. Fearing that the car’s location would have resulted in it “being stolen or damaged or hit by another car going southbound on that highway,” Deputy Mears summoned a wrecker to tow the vehicle to the sheriff’s station.
When Deputy Cooley, the first issuing deputy, learned that the defendant had again been ticketed for speeding, he re-issued the original ticket at the speed actually timed earlier by him — 89 miles per hour. This action was taken at the sheriff’s office, where Deputy Cooley had heard of defendant’s arrest. Defendant’s bond for the two speeding violations was set at $300.00, and he had enough cash on his person to pay that amount, but he did not have the amount necessary to pay both his bond and the wrecker’s towing fee. Disregarding the deputies’ repeated advice to pay the wrecker’s towing fee so that his car would not have to be towed to a storage area, the defendant refused to pay the fee, thereby electing to leave his car in the tower’s custody. The defendant told the wrecker’s driver that he would pick up the car in a day or two.
The driver of the wrecker, Mr. Henry Cooley, then requested Deputies Mears and Cooley to inventory the car’s contents. Mr. Cooley testified that this was a standard procedure used to protect the car’s con *182 tents and to protect him against fraudulent claims by owners alleging losses of nonexistent items.
During the inventory an opened bank bag was located lying on the rear floorboard partially under the driver’s seat.[2] The bag contained a large amount of cash (in excess of $2,500.00), a small notebook and numerous, small plastic packets wrapped in a paper towel. The packets contained a white powdery substance which was later determined to consist of cocaine.
ASSIGNMENT OF ERROR
Defendant assigns as error the trial judge’s denial of the motion to suppress the cocaine. The latter held that the actions of the deputies in conducting the inventory “were entirely reasonable and proper.” We agree.
As the search and seizure of the defendant’s rented car were conducted without a warrant, the State must shoulder the burden of affirmatively proving that they were justified under a recognized exception to the warrant requirements of the Fourth Amendment and LSA-Const. Art. I, § 5 (1974). State v. Sims, 426 So.2d 148 (La.1983); State v. Jernigan, 390 So.2d 1306 (La.1980). The trial judge found that a valid inventory search occurred, and this has been recognized to be an exception to the warrant requirement. South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); State v. Jewell, 338 So.2d 633 (La.1976).
In establishing its burden of proof that the actions of its officers constituted a valid inventory search, “the state must prove that the impoundment of the defendant’s vehicle was necessary and that the inventory of the vehicle’s contents was necessary and reasonable in its scope.” State v. Sims, supra, at 153, citing State v. Crosby, 403 So.2d 1217 (La.1981), and State v. Jewell, supra. To ensure that the inventory search is not merely a subterfuge to circumvent the warrant requirements of the federal and state constitutions, the courts have ascertained several factors to be significant in determining whether a genuine inventory search occurred. Those factors are whether:
“(1) the vehicle could not have remained safely at or near the place it was stopped; (2) the search was not conducted in the field; (3) the tow truck was called before the search commenced; (4) formal impoundment procedures were followed; (5) the vehicle operator was asked if he consented to a search, if the car contained valuables, or if he would consent to the agency’s failure to afford him the protection of an inventory search; [and] (6) arrangements were made for someone designated by the operator to take possession or protective custody of the vehicle for him_” State v. Sims, supra.
The factors aforementioned, when applied to the case before us, amply indicate that the deputies conducted a valid inventory search of defendant’s vehicle. When the defendant was arrested for speeding on Highway 171, the hour was late (nearly midnight), and the unattended vehicle’s location on the road’s shoulder posed a potential traffic hazard. The arresting deputy was aware that the car was rented from Texas, and he feared the additional danger of vandalism. The defendant was from Texas, as indicated by his Texas license, and there is no evidence that he informed Deputy Mears of anyone within a reasonable distance, or otherwise, who could care for his car.
The call for a wrecker to tow the car to the Sheriff’s Department in DeRidder was, therefore, both necessary and reasonable under the attendant circumstances. The record reflects that Deputy Mears was following routine procedures in arresting the defendant and impounding his vehicle. No attempt was made by either deputy to search the defendant’s vehicle while it was on the highway. Indeed, Deputy Cooley had earlier allowed the defendant to proceed with his journey, although he could *183 have easily arrested him for the first speeding violation.
After hearing the testimony of the deputies, the trial judge, fully cognizant of the scrutiny necessitated by inventory searches, found that no subterfuge had been practiced by the officers. We are in agreement with the following language by the lower court:

“There had not been any suspicion on the part of Officer Cooley that there was any contraband in Mr. Joyner’s car, nor was there any indication of any suspicion on the part of Officer Mears who made the second stop. So there’s nothing to indicate that the officers were eager to search the automobile operated by Mr. Joyner....”

It was not until after the vehicle had been towed to the parish jail and after the defendant had refused to pay his towing bill that the car was prepared to be sent to a storage area. In fact, it is apparent that the deputies and Mr. Cooley had futilely attempted several times to make arrangements with the defendant which would have prevented the storage and subsequent inventory of his vehicle. Although it appears that Beauregard Parish had not instituted a formal procedure for taking inventory of impounded vehicles, the evidence preponderates that the search was a standard procedure used in protecting items within the vehicle.
The lateness of the hour and the defendant’s refusal to pay the towing fee made the impoundment action both necessary and reasonable. Equally defensible was Mr. Cooley’s request that the deputies perform an inventory of the car’s contents. That inventory was not conducted in an intensive, evidence-searching fashion, but to locate the defendant’s valuables. Items found other than the bag included shoes in the trunk, a knife, a “fuzz-buster,” a checkbook and some cash.
Although the defendant’s consent to the inventory search or his waiver of the custodian’s liability for items in the car was never sought by the officers, this does not make the inventory defective. See, e.g., State v. Sims, State v. Jernigan, supra. Additionally, we note that Mr. Cooley testified that the defendant told him to “keep the car” until he could pick it up later. This statement expressly authorized Mr. Cooley to be custodian of the vehicle and his decision to request an inventory of the contents would, therefore, be valid without the defendant’s consent.
In sum, we find the officers’ actions to have been entirely reasonable, and the State has easily met its burden of proving the occurrence of a valid inventory search. For these reasons, this assignment lacks merit.
Accordingly, the defendant’s conviction and sentence are affirmed.
AFFIRMED.

. There were actually two separate seizures. The first occurred during an alleged "inventory search” and involved numerous packets subsequently determined to contain cocaine. The second seizure was of a single packet (containing a trace of cocaine) which fell from the defendant's underwear as he was being prepared for incarceration, subsequent to his arrest for illegal possession of the contraband seized during the inventory search. On appeal defendant does not challenge the lower court’s denial of his motion to suppress the single packet. We are, therefore, concerned with only the inventory search and seizure.

. Both officers testified that the bag was open, and Deputy Cooley stated that the zipper on the bag would not close when he attempted to close it.