475 So.2d 791 (1985)
STATE of Louisiana, Plaintiff-Appellee,
v.
Junius LAMBERT, Defendant-Appellant.
Nos. CR84-1108, 1109.
Court of Appeal of Louisiana, Third Circuit.
August 22, 1985.
Rehearing Denied September 16, 1985.
*793 Gerald J. Block, Lafayette, for defendant-appellant.
Robin Rhodes, Asst. Dist. Atty., Lafayette, for plaintiff-appellee.
Before STOKER, LABORDE and YELVERTON, JJ.
YELVERTON, Judge.
Junius Lambert, convicted by a jury of nine counts of illegal possession of stolen things in violation of La.R.S. 14:69, and sentenced to a total of 40 years, partly as a multiple offender under La.R.S. 15:529.1, appeals both the conviction and the sentence, arguing 16 assignments of error. We find no merit to any assignment, and we affirm.

FACTS
On September 28, 1983, Officer Myers observed the defendant walking through a parking lot of the Hilton Hotel in Lafayette and examining the interiors of vehicles. When the defendant got to an Oldsmobile Cutlass, in which was seated Melba Martin, the officer approached him and asked for a driver's license and registration of the vehicle, neither of which the defendant was able to provide. The officer patted down the defendant and found keys to Room 440 in the Holiday Inn. The officer allowed the defendant and Melba Martin to leave on foot since defendant did not have a driver's license. The officer then contacted the Lafayette Police Department and learned that the Cutlass was stolen. He called another officer, Hundley, who found stolen items in the Holiday Inn room which the defendant had obtained with a non-valid credit card. Officer Hundley then arrested the defendant.
The following stolen items which, along with the car, formed the basis of the bill of information, were found in the car and the hotel room:
(1) Olympus Camera
(2) Wallet
(3) Drivers License
(4) Guaranty Bank 24 Card
(5) Visa-Bank Americard
(6) Commercial Energy Bank Card
(7) FNB Mastercard
(8) Visa Credit Card, Firm's Card Hayes, Fazzio & Durio
(9) Handgun
(10) Hunting Knife
(11) Leather Coat
We will discuss the 16 assignments of error by grouping them generally into those pertaining to the convictions, and those pertaining to the sentence. We begin our discussion with Assignment No. 15.

THE CONVICTION ASSIGNMENTS OF ERROR

Assignment of Error No. 15
This assignment presents a Jackson v. Virginia sufficiency of proof argument.
Illegal possession of stolen items is defined as follows:
"Illegal possession of stolen things is the intentional possessing, procuring, receiving, or concealing of anything of value which has been the subject of any robbery or theft, under circumstances which indicate that the offender knew or had good reason to believe that the thing was the subject of one of these offenses." La.R.S. 14:69(A)
According to Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), a conviction must be based on proof sufficient for a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find that the essential elements of the charge have been proved beyond a reasonable doubt. In a case such as this one which, according to the defendant, involves solely circumstantial evidence, the evidence must exclude every reasonable hypothesis of innocence. La.R.S. 15:438; State v. Chism, 436 So.2d 464 (La. 1983). The record reveals that every reasonable hypothesis of innocence was excluded.
A handgun, a knife and a coat were taken from Paul Fitch's car and found in *794 the car defendant was driving. Several credit cards, none of which were issued in the defendant's name, were also found in the car. A camera, which Stephen McGoffin testified had been taken from his car, was found in the hotel room. The car, a 1981 Cutlass Oldsmobile, was itself stolen from Donna Barbin. All of the stolen items were found under the defendant's control or possession: those that were not in the car were found in the hotel room in which he was staying.
The circumstances indicate that the defendant knew the items were stolen: the credit cards were not issued in his name; the handgun had someone else's name engraved on it; and the original owners of the items stated that they did not give the defendant the authority to be in possession of the items.
Defendant also contends, again arguing Jackson v. Virginia, that the values of certain items were not proven. Mr. McGoffin testified that he had paid $185 for the camera and $115 for the lens. The jury found the value of the entire unit to be $300. Mr. McGoffin's wallet had cost him $40, the same value the jury placed on it. The jury found the value of the driver's license to be $12, the amount Mr. McGoffin paid for a replacement. Paul Fitch testified that he paid $150 for the leather jacket, which was valued at $125 by the jury. He paid $185 for the hunting knife. The jury set the value at that amount. Donna Barbin testified that the insurance company paid her $11,500 for the stolen car. The jury valued the car at $11,500. The issue of the values of the credit cards and the handgun will be found discussed later in this opinion under Assignments of Error Nos. 4 and 5.
This assignment of error lacks merit.

Assignments of Error Nos. 2 and 4
In these assignments of error the defendant alleges that the trial court erred in not sustaining defendant's hearsay objections as to the values of the two Visa credit cards and the handgun.
Stephen McGoffin, whose Visa-Bank Americard was stolen, testified that if the card was stolen and used he would be responsible for the first $50 until the card was cancelled. He also testified that five dollars was the amount paid for the replacement of the card. From McGoffin there was also stolen a Visa Card in the name of the law firm of Hayes, Fazzio and Durio. He testified that the renewal for the card was $15 and the replacement value five dollars.
Paul Fitch testified that the value of the stolen gun he had to replace was $469.
The defendant now argues that the above victims' comments on the value of the stolen items were hearsay and should not have been admitted. We do not agree. In State v. Square, 433 So.2d 104 (La.1983), the court stated that an auditor's testimony concerning the result of an audit determining the amount of a loss related a fact within his personal knowledge and, thus, was not inadmissible hearsay. In the same fashion McGoffin's testimony concerning the liability as to the credit cards and Fitch's testimony as to the amount he had to pay to replace the gun were all within the witnesses' personal knowledge and, thus, admissible.
In situations in which the defendant has objected to the owner's testifying as to the value of the goods on the grounds that the owner was not an expert rather than on the grounds that the testimony was hearsay, it has been held:
"Unless it is shown the owner lacks knowledge of the value of a movable, his testimony as to value is generally admissible, with its weight being left to the jury...."
State v. McCray, 305 So.2d 433 (La.1974). These assignments of error lack merit.

Assignments of Error Nos. 3 and 5
In these assignments of error the defendant argues that the trial court erred in concluding that the state carried its burden of proving each and every element of the crimes listed as Counts 2(d) and 5 on the verdict form. Count 2(d) refers to the stolen Visa-Bank Americard valued by the *795 jury at $55. Count 5 refers to the handgun valued by the jury at $134. The defendant contends that the evidence presented at trial was insufficient to prove the value of these items.
We again apply the Jackson v. Virginia, supra, standard of review.
The state presented Stephen McGoffin who testified that the replacement value of the card was five dollars and that if he had not reported the loss of the card, he would have been responsible for the first $50. Mr. Fitch testified that he had bought the handgun in 1967 and to replace it he had to pay $469. The jury found the gun to be valued at $234.
In assessing the value of the credit card at $55 the jury considered the victim's possible loss, five dollars for getting a new card and $50 for possible liability incurred before a report of the loss was made.
In claiming that no value was ascertainable for the gun the defendant cited State v. Peoples, 383 So.2d 1006 (La.1980), in which the court stated that although the state offered evidence of the original purchase price of the stolen items, which were from two to seven years old at the time of the crime, and the replacement cost of new equipment, it did not offer evidence tending to prove the value of the items at the time of the offense. The facts of State v. Peoples, however, can be distinguished from the one before us. There, the state did not introduce the actual stolen items, or even photographs, but only receipts. In the case before us, however, the state introduced the actual handgun. The jury was enabled to examine the handgun and determine its condition. By valuing the gun at $234 rather than $469 the jury obviously took depreciation into account.
The state's showing was, therefore, sufficient to allow a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to conclude that the handgun had a value of $234 and the credit card a value of $55.

Assignments of Error Nos. 7 and 9
In these assignments of error the defendant contends that the trial court erred in accepting Daniel Brewer as an expert in fingerprinting analysis and in accepting Mr. Brewer's fingerprint comparisons. At the multiple offender hearing Mr. Brewer testified that the fingerprints on conviction records matched those of the defendant.
The acceptance of a witness as an expert is a matter entrusted to the discretion of the trial judge; his ruling will not be overturned on appeal absent an abuse of discretion. State v. Michel, 422 So.2d 1115 (La.1982). The record reveals no abuse of discretion.
The qualifications of Mr. Brewer are equal to or superior to those of individuals accepted as experts in other cases in fingerprint analysis. In State v. White, 430 So.2d 174 (La.App. 2nd Cir.1983), an officer who had engaged in fingerprint work for six to seven years, and who had received training at the L.S.U. Law Enforcement Institute and at the Shreveport Northwest Crime Lab, was considered qualified. In State v. Baldwin, 388 So.2d 664 (La.1980), cert. denied, 449 U.S. 1103, 101 S.Ct. 901, 66 L.Ed.2d 830 (1981), rehearing denied 450 U.S. 971, 101 S.Ct. 1493, 67 L.Ed.2d 622 (1981), a detective who had worked in the development of latent fingerprints for six years and had attended various schools was held to be an expert.
Mr. Brewer had been working in the area of fingerprinting for five to six years, had attended seminars in 24 schools, and has never failed to qualify as an expert. Mr. Brewer, thus, appears to be as qualified as others who have been considered experts. The trial court did not abuse its discretion in accepting him as an expert. Assignment of error No. 7, therefore, lacks merit.
The defendant also argues that Brewer's comparisons of fingerprints did not meet his own requirements. The record shows otherwise. The defendant contends that while Brewer stated that usually six hours were spent on a comparison, in this case only 30 minutes was spent. *796 The witness did testify that usually it would take two to three hours to compare fingerprints and then another two to three hours to prepare the prints for presentation. He also testified, however, that in this case 30 minutes was sufficient to identify the fingerprints.
The defendant also argues that while Brewer stated that his office normally requires a minimum of 12 points of similarity in order to determine if prints are similar, in this case he found only eight points of similarity. Although Brewer did state that his office usually requires 12 points of similarity, he also stated the F.B.I. recommends only eight. Brewer found eight or more points of similarity in his comparisons.
The trial court, therefore, did not err in accepting Brewer's comparisons. Assignment of error No. 9 lacks merit.

Assignment of Error No. 8
In this assignment of error the defendant contends that the trial court erred in allowing the introduction of prison packets at the multiple offender hearing. At the hearing the defense counsel objected to the introduction of the packets on the basis that the packets were not certified by the warden or other chief officer of any penitentiary as required by La.R.S. 15:529.1.
A non-penitentiary agency is not authorized to offer proof of prior offenses. State v. Nicholas, 359 So.2d 965 (La.1978). Only documents properly certified under La.R.S. 15:529.1(F.) by the officer with legal custody of the documents can be admitted into evidence as proof of prior offenses. State v. Lozier, 375 So.2d 1333 (La.1979). In the case before us the packets were certified by the secretary of the Louisiana Department of Corrections which is a penitentiary agency that had legal custody of the documents. The trial court, thus, properly admitted the prison packets. This assignment of error lacks merit.

SENTENCE ASSIGNMENTS OF ERROR
We turn now to a discussion of the second grouping of assignments of error, those that relate to sentencing.
The defendant was convicted on May 3, 1984, of nine counts, five felonies and four misdemeanors, all illegal possession of stolen things. The felonies and their sentences are described as follows:

Item and Value Years at Hard Labor
Car, $11,500 30
Olympus camera, $300 2
Handgun, $234 2
Hunting knife, $185 2
Leather coat, $125 2

The misdemeanor convictions and their sentences were:

Item and Value Months in Parish Jail
Wallet, $40 6
Driver's License, $12 6
Visa-Bankamericard, $55 6
Visa credit card, $25 6

Only the first sentence listed above, the one concerning the automobile, was enhanced under the habitual offender bill.
All nine sentences were made to run consecutively. The result was the imposition of a total of 40 years.

Assignments of Error Nos. 11 and 13
In these, the defendant contends that at the multiple offender hearing the trial court erred in allowing testimony as to convictions where more than five years had elapsed since the expiration of the sentence, conviction, or commission, and that the trial court erred in finding that the state had carried its burden of proof on Counts 1-5 of the multiple bill.
The bill of information charging defendant with being a multiple offender alleged five prior convictions in addition to the May 3, 1984, convictions which formed the latest charges. At sentencing, the trial court, noting that four of the previous convictions were within a five year period of the last felonies, sentenced defendant in accordance with La.R.S. 15:529.1, the Habitual Offender Law.
The applicable subsection, R.S. 15:529.1(C), provides:
"C. This Section shall not be applicable in cases where more than five years have elapsed since the expiration of the maximum sentence, or sentences, of the *797 previous conviction, or convictions, and the time of the commission of the last felony for which he has been convicted. In computing the period of time as provided herein, any period of servitude by a person in a penal institution, within or without the state, shall not be included in the computation of any of said five year periods."
The instant offenses occurred on September 28, 1983. The five prior offenses alleged in the bill of information charging defendant with being a multiple offender included (1) conviction for four counts of simple burglary for which defendant was sentenced on November 8, 1976; (2) six counts of simple burglary for which defendant was sentenced on January 21, 1977; (3) a conviction for simple burglary for which defendant was sentenced on September 11, 1979; (4) a conviction for attempted burglary and theft over $500 for which defendant was sentenced on December 6, 1979; and (5) a conviction for possession of phenmatrazine and receiving stolen things for which defendant was sentenced on May 19, 1981. In sentencing the defendant, the court expressly did not take into account the 1976 convictions, No. (1) in this paragraph.
Defendant contends that the state failed to prove that less than five years elapsed between defendant's discharge on these prior convictions and the date of the instant offense. That is not so. For purposes of the multiple offender statute, in the determination of the expiration of a given sentence, it is not the imposed sentence which governs, but the date of the persons' actual discharge from supervision by the Department of Corrections. State ex rel Wilson v. Maggio, 422 So.2d 1121 (La.1982); State v. Anderson, 349 So.2d 311 (La.1977).
The instant offense occurred on September 28, 1983. According to the habitual offender statute, only offenses occurring after September 28, 1978, could be considered. That statute states, however, that any period of servitude in a penal institution shall not be included in the computation of the five years. On March 18, 1982, defendant was released from the sentence imposed for the possession of phenmatrazine and receiving stolen items. The ten months spent by defendant in a penal institution for that conviction, would therefore change the date used in the computation to at least December 28, 1977. Of the five conviction counts used in the multiple bill, only one conviction, the one in 1976, which the trial court did not consider, falls outside the period between September 28, 1983, and December 28, 1977. Accordingly, the trial court did not err in considering the other convictions. This assignment of error lacks merit.
The defendant also contends that the state failed to carry its burden of proof on Counts 1 through 5 of the multiple offender bill of information. The record reveals otherwise. Since only Counts 2 through 5 were considered, only their merit will be addressed.
In reference to the conviction for six counts of simple burglary on January 21, 1977, the state submitted the minutes of the defendant's guilty plea and sentencing and documents revealing his discharge on July 16, 1978, by virtue of "good time".
As to the conviction of simple burglary on September 11, 1979, the state submitted the bill of information, the minutes and transcript of the boykinization and sentencing, and fingerprints of the defendant taken at that time. To prove the conviction for attempted burglary and theft the state introduced the bills of information, transcripts of the boykinization, the minutes of the sentencing, and fingerprints. The conviction for possession of phenmatrazine and receiving stolen things was shown by means of bills of information, the transcript of the boykinization, fingerprints, and documents evidencing his discharge on March 18, 1982. The State met its burden of proof as to all counts. Assignment of error 13 lacks merit.

Assignment of Error No. 14
In this assignment the defendant contends that his sentence was excessive.
*798 The defendant complains both that each sentence was excessive, and also that the total of the consecutive sentences was excessive. We will examine each argument.
The sentence of 30 years at hard labor imposed for the illegal possession of the stolen car, was one that was not entirely within the trial court's discretion. By means of LSA-R.S. 15:529.1, the legislature has declared a fourth felony offender must be sentenced to at least 20 years with a maximum of not more than his natural life. Thus, the appellant's argument that this sentence was excessive because it was three times the maximum provided for the substantive offense, R.S. 14:69, fails to consider the effect of the multiple offender statute upon the sentencing range. The sentence actually imposed was well within the sentencing range and, in fact, considering this defendant's age of 32 at the time of conviction, it is on the low side of the sentencing range.
The trial judge did not sentence defendant under the multiple offender bill on more than one of the May 3, 1984, felony convictions. In this the trial judge complied with the jurisprudence which declares that conviction on more than one count entered on the same date should be treated as one conviction for applying the habitual offender statute. State v. Sherer, 411 So.2d 1050 (La.1982). For the remaining eight counts, four felonies and four misdemeanors, the sentencing judge gave the defendant the maximum sentences which, when ordered to run consecutive, added up to a total of 10 years.
While the sentencing judge was not permitted to apply the habitual offender statute to enhance these remaining felonies, it was permissible for the judge to considerand the court expressly did considerthe defendant's impressive criminal record in imposing these maximum sentences. The record shows that in the few years of his adult life preceding the May 3, 1984, present convictions (he was then 32), the defendant had been convicted of 17 felonies. Against that record, the argument that nothing in his prior conduct either caused or threatened serious harm, which is the only mitigating circumstance on which appellant relies, carries little weight.
An appellate court will set aside a sentence and order resentencing if it finds that the sentence imposed was constitutionally excessive. Article 1, § 20, La. Constitution of 1974. State v. Sepulvado, 367 So.2d 762 (La.1979). The sentencing judge is given wide discretion in imposing a sentence within the statutory limits, and such a sentence should not be set aside as excessive in the absence of a manifest abuse of discretion. State v. Square, 433 So.2d 104 (La.1983). A sentence is constitutionally excessive if it is grossly out of proportion to the severity of the offense or nothing more than a needless and purposeless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980).
It is our conclusion that neither the individual sentences, nor the total of the consecutive sentences, were constitutionally excessive. The convictions and sentences are affirmed.

Assignment of Error No. 16
The defendant in this assignment of error requests that the court inspect the record for errors patent. This court necessarily inspects the record for errors patent and in this case found none.
For the above reasons, the convictions and sentences are affirmed.
AFFIRMED.