576 So.2d 1000 (1991)
STATE of Louisiana
v.
Etienne J. LAVIOLETTE.
No. Cr90-384.
Court of Appeal of Louisiana, Third Circuit.
February 6, 1991.
On Rehearing March 26, 1991.
Writ Denied June 14, 1991.
*1001 Michael D. Skinner, Goode, Skinner, Hawkland & Shullaw, Lafayette, for defendant-appellant.
J. Phil Haney, Asst. Dist. Atty., New Iberia, for plaintiff-appellee.
Before GUIDRY, STOKER and DOUCET, JJ.
GUIDRY, Judge.
On December 4, 1989, defendant, Etienne J. Laviolette, was tried and convicted by a twelve person jury of possession with intent to distribute a controlled dangerous substance, marijuana, a violation of La.R.S. 40:966(A)(1). On January 18, 1990, defendant was sentenced to serve eleven years at hard labor with the Department of Corrections and to pay a fine of $15,000.00 plus all costs of court or in default thereof, to serve an additional two years in the parish jail. Defendant appeals his conviction and sentence arguing the following six assignments of error:
1. The trial court erred in refusing to grant defendant's motion to suppress.
2. The trial court erred in accepting a state trooper as an expert, despite his lack of knowledge and expertise sufficient to allow him to be qualified as an expert, which resulted in prejudice to the defendant.
3. The trial court erred in refusing to grant defendant's motion for post verdict judgment of acquittal.
4. The trial court erred in imposing an excessive fine in the amount of $15,000.00 in lieu of which defendant is to serve two years in the parish jail and imposing an excessive term of imprisonment of eleven years at hard labor.
5. The trial court erred in allowing evidence of other crimes to be introduced which resulted in prejudice to defendant.
6. The trial court erred in that the law and the evidence do not justify a verdict of guilty of possession of marijuana with intent to distribute.
Inasmuch as we find merit in defendant's first assignment of error and reverse his conviction and the sentence imposed, we will not address the other five assignments of error.

FACTS
At approximately 3:15 a.m. February 1, 1989, two St. Martinville City Police officers, Judy Huval and Glenn Neveu, stopped the defendant, who was driving a 1988 Pontiac, for suspicion of operating a vehicle while intoxicated, a violation of La.R.S. 14:98. After repeated requests to do so, the driver exited his vehicle and unsteadily made his way back to the police car. While Officer Huval administered a field sobriety test, Officer Neveu proceeded to check the defendant's automobile for passengers. Also, defendant had left the motor running and the officer wanted to turn the engine off. Officer Neveu noticed a suspicious bag, in plain view, inside the car and summoned his partner. Officer Huval testified that the window on the driver's side was down and she and her partner could see a large, clear plastic bag containing brownish-green vegetable matter, which resembled marijuana, protruding from under the driver's seat.
At that point, defendant was read his rights, placed under arrest for DWI and possession of marijuana. He was then placed in the back of the police car. Backup was summoned and Officers Huval and Neveu searched defendant's car, removing *1002 the bag of vegetable matter, several open bottles of liquor and a bank envelope containing an unspecified amount of money. The evidence was placed in a cardboard box and transported to the St. Martinville City Police station where it was turned over to Detective Lercy Melancon.
Officer Barras, who answered the call for backup, testified that upon arrival at the scene, he too observed the bag of green plant matter in plain view in defendant's car. He further stated that he was present during the search of the car, he stayed with the car until it was picked up by Champ's Wrecker Service and he instructed Mr. Champagne not to let anyone touch the car until instructed otherwise.
Officer Huval testified that upon arrival at the police station, defendant offered the officers money to avoid being charged with possession of marijuana. She also stated that the defendant suggested to the officers that they could keep the marijuana if they did not file charges.
At the police station, Officer Barras heard defendant voluntarily say that he had purchased about a pound of marijuana earlier that day and that the officers could have the marijuana and the money if they just charged him with DWI. Defendant further told the officers that the reason he had purchased so much marijuana was because he was tired of buying $30.00 bags.
Detective Melancon, after again advising defendant of his rights, asked defendant if the marijuana was his and if so, where he bought it. Defendant answered saying he had purchased the pound of marijuana for $800.00 in Houston because he was tired of buying $30.00 bags, and that he bought it for his own personal use. After hearing that, Melancon left the defendant to begin preparing his report. He returned a short while later to hear defendant say that if the officers dropped the possession of marijuana charges, they could keep the marijuana and the money.
Detective Melancon testified that the following morning he searched defendant's car, which had been secured at a wrecking yard after defendant's arrest. During this warrantless search, which he admitted was to find additional evidence, he opened the console which was secured only by an unlocked button and found an ounce/gram scale which could be used to measure marijuana, "roach clips" and several small marijuana cigarette butts commonly known as "roaches".
A forensic chemist who tested the material in the bag testified that the bag contained 12.7 ounces of marijuana. The chemist testified that there was enough marijuana to roll approximately 1400 average size cigarettes.
Louisiana State Trooper Walter Legendre, testifying as an expert in the field of packaging, sales and distribution of marijuana, stated that in his fourteen years in law enforcement, he had never known of anyone to purchase a pound of marijuana strictly for personal use. Furthermore, he testified that the package seized by the police was the size package which would normally contain a pound of marijuana. Trooper Legendre stated that marijuana could be sold by "finger bags" or by weight, after being weighed on a scale like the one seized by the police.
Mrs. Laviolette, defendant's wife, testified that she and defendant were at their home at approximately 2:30 a.m. that night when she saw the bag of marijuana. An argument ensued and Mrs. Laviolette asked defendant to leave the house and dispose of the marijuana. He agreed. She further testified that she had never known or seen defendant use or sell marijuana. On cross-examination by the State, she admitted that she lied to the police when she stated the marijuana was hers to cover up for her husband and that she could not say definitely that her husband did not sell marijuana.

ASSIGNMENT OF ERROR NO. 1
Defendant argues, in this assignment of error, that the trial court erred in denying his motion to suppress. Specifically, he argues that the warrantless search by Detective Melancon of his car in the wrecker yard after he was arrested was unlawful since it does not fall under any recognized *1003 exception to the warrant requirement. As the search and seizure of the defendant's vehicle was conducted without a warrant, the State bears the burden of affirmatively establishing that the search was justified under a recognized exception to the warrant requirement of the Fourth Amendment and La. Const. Art. I, Sec. 5 (1974). State v. Sims, 426 So.2d 148 (La. 1983).
A true inventory search has been held to be a valid exception to the warrant requirement. South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); State v. Jewell, 338 So.2d 633 (La. 1976). To fall within the inventory search exception, the State must prove that the impoundment of the vehicle was necessary and that the inventory of the vehicle's contents was necessary and reasonable in its scope. State v. Sims, supra, at p. 153, citing State v. Crosby, 403 So.2d 1217 (La. 1981), and State v. Jewell, supra. To ensure that the inventory search is not merely a subterfuge to circumvent the warrant requirements of the federal and state constitutions, several factors are considered to be significant in determining whether a true inventory search has occurred: (1) the vehicle could not have remained safely at or near the place it was stopped; (2) the search was not conducted in the field; (3) the tow truck was called before the search commenced; (4) formal impoundment procedures were followed; (5) the vehicle operator was asked if he consented to a search, if the car contained valuables, or if he would consent to the agency's failure to afford him the protection of an inventory search; and, (6) arrangements were made for someone designated by the operator to take possession or protective custody of the vehicle for him. State v. Joyner, 445 So.2d 179 (La.App. 3rd Cir.1984), writ denied, 447 So.2d 1068 (La.1984), citing State v. Sims, supra.
Absent an inventory situation, in order for a warrantless search of a vehicle to be constitutional, two conditions must exist: (1) there must be probable cause to believe that the vehicle contains contraband or evidence of a crime, and (2) there must be exigent circumstances requiring an immediate search. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); State v. Chaney, 423 So.2d 1092 (La.1983). The Louisiana Supreme Court in State v. Guzman, 362 So.2d 744 (La. 1978), cert. denied, 443 U.S. 912, 99 S.Ct. 3103, 61 L.Ed.2d 876 (1979), defined "exigent circumstances" as:
"[T]he impracticability of obtaining a warrant due to the possibility that the car could be moved either by its occupants, if not arrested, or by someone else. An immediate warrantless search is, therefore, constitutionally permissible when `the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained.'" Chambers, supra, 362 So.2d at 748.
In the instant case, the State has failed to meet its burden of establishing an exception to the warrant requirement for the search conducted on the morning following defendant's arrest. Clearly, no exigent circumstances existed when Detective Melancon proceeded to the wrecking yard where defendant's vehicle was stored. The vehicle was secured by the owner of the wrecking yard and there was little chance that any evidence in the car would be removed. Moreover, the officer who searched the car testified that the purpose of his going to the car that morning was to search for additional evidence, not to inventory its contents. There is no evidence that formal impoundment procedures were followed and there is no evidence that defendant consented to the search. The State, at the hearing on the motion to suppress, did not even suggest that a valid inventory search was conducted by Detective Melancon. Thus, under the applicable law, the State has failed to meet its burden of proof. See State v. Green, 482 So.2d 930 (La.App. 2d Cir.1986).
In sum, we conclude that the trial court erred when it denied defendant's motion to suppress the evidence obtained in the search conducted by Detective Melancon after defendant's car was impounded.
*1004 Defendant was convicted of possession with intent to distribute marijuana, in violation of La.R.S. 40:966(A) which provides in pertinent part:
"A. Manufacture; distribution. Except as authorized by this part, it shall be unlawful for any person knowingly or intentionally:
(1) To produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance classified in Schedule I."
The State obviously relied, at least in part, upon the illegally seized evidence in proving its case. Detective Melancon testified that he retrieved a scale and some marijuana cigarette butts from the car. Trooper Legendre, an expert in the packaging and sale of drugs, testified that the scale which was seized was probably used to weigh drugs for sale.
The State argues that even if the evidence seized in the warrantless second search of defendant's car was admitted in error, the evidence against defendant was overwhelming and thus, the wrongful admission of the illegally seized evidence was harmless error.
In this case, the State presented the following evidence to support its contention of the defendant's "intent to distribute": the 12.7 ounces of marijuana; a bank envelope which contained an unspecified amount of money; the scales; and, the testimonies of Trooper Legendre and a forensic chemist. The marijuana was all in one bulk package. There were no baggies or smaller packages of marijuana. The State discovered no ledger or list of names and quantities and/or prices. Nor was any evidence offered of other sales or attempted sales by the defendant.
In State v. Green, 493 So.2d 1178 (La. 1986), the Louisiana Supreme Court addressed the "harmless error" question stating:
"In order to determine if improperly admitted evidence has prejudiced a defendant, this court has adopted the test for harmless error announced in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In State v. Gibson, 391 So.2d 421 (La.1980), this court determined the harmless error rule of Chapman used by the federal courts was `the standard most compatible with this Court's view of its own criminal appellate jurisdiction.' Gibson, supra.

In Gibson the court was concerned with prejudice suffered by the defendant due to the introduction of evidence which had been obtained through an unreasonable search and seizure. The introduction of the evidence was found to be harmless by application of the Chapman test, i.e.,
'... whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction' and that `the court must be able to declare a belief that (the error) was harmless beyond a reasonable doubt,' Gibson, supra. (Emphasis added.)"
And more recently, in State v. Walters, 523 So.2d 811 (La.1988), our Supreme Court reiterated:
"... In determining whether the erroneous admission of evidence requires reversal of a defendant's conviction, the reviewing court should not consider the error harmless unless `convinced beyond a reasonable doubt that [the evidence] contributed to the verdict.' The correct standard is whether there is a `reasonable' possibility that the evidence might have contributed to the verdict, and whether the reviewing court is prepared to state beyond a reasonable doubt that it did not." (citations omitted).
We are not, in this case, prepared to say that the erroneous admission of the scales in evidence did not, beyond a reasonable doubt, contribute to the verdict.
Accordingly, for the reasons stated, the defendant's conviction and the sentence imposed are reversed and set aside and this matter is remanded to the district court for a new trial excluding the illegally seized evidence.
REVERSED AND REMANDED.

*1005 ON REHEARING
We granted a rehearing in this case to reconsider our conclusion that the trial court committed reversible error when it refused to suppress the fruits of a warrantless search of defendant's automobile conducted some six hours following defendant's arrest and after the automobile had been impounded and stored in a wrecker yard. Upon reconsideration, we determine, for the reasons which follow, that we erred in our original opinion. Additionally, we have considered appellant's other assignments of error, a discussion of which was pretermitted in our original opinion, and finding no merit in such assignments except as to the sentence imposed, we now affirm defendant's conviction and amend the sentence imposed.
We refer to our original opinion in this matter for a full recitation of the attendant facts.

ASSIGNMENT OF ERROR NO. 1
Defendant argues that the trial court erred when it refused to suppress the fruits of a warrantless search by Detective Melancon of his automobile, conducted some six hours following his arrest and after the car had been impounded and stored in a wrecker yard.
In State v. Ritchie, 556 So.2d 651 (La. App.1990), writ granted on an unrelated assignment of error, 563 So.2d 888 (La. 1990), our brethren of the Second Circuit considered the validity of a warrantless search of a pleasure boat conducted several hours after the boat had been seized and impounded by law enforcement officers. The court concluded that the search was reasonable and justified under the automobile exception to the warrant requirement. In upholding the validity of the search, the court stated:
"In State v. Denton, 387 So.2d 578 (La. 1980), the Louisiana Supreme Court discussed warrantless searches, the automobile exception to the warrant requirement and the application of that exception to searches of boats. The court stated:
`It is well settled that a search conducted without a warrant issued upon probable cause is per se unreasonable under the fourth amendment, subject only to a few specifically established and well-delineated exceptions. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); State v. Spencer, 374 So.2d 1195 (La.1979); State v. Gordon, 332 So.2d 262 (La.1976). One of these exceptions is the so-called "automobile exception." This exception is based upon the existence of probable cause to search the vehicle and exigent circumstances which render it impractical to secure a warrant. Coolidge v. New Hampshire, supra; Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); State v. Spencer, supra; State v. Gordon, supra. This exception applies equally to a vessel. United States v. Weinrich, 586 F.2d 481 (5th Cir.1978) cert. denied, Blair v. U.S., 440 U.S. 982, 99 S.Ct. 1792, 60 L.Ed.2d 243 and 441 U.S. 927, 99 S.Ct. 2041, 60 L.Ed.2d 402 (1979).'
Since the decision in State v. Denton, the United States Supreme Court has dealt with the `automobile exception' in numerous cases, further explaining the exception and its rationale. In California v. Carney, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985), the court held that in addition to the ready mobility of a vehicle stressed as the rationale for the exception in earlier cases, another basis for the exception is the reduced expectation of privacy with respect to a vehicle. The court noted that the exception has been applied where an automobile was not immediately mobile. In some cases, configuration of the vehicle contributed to the lower expectation of privacy because parts of an automobile are relatively open to plain view. The exception has also been applied where enclosed areas are involved, the reduced expectation of privacy being derived *1006 from the pervasive regulation of vehicles capable of traveling on public highways.
Other cases have recognized that exigency is inherent in the mobility of vehicles and searches of vehicles have been upheld under the automobile exception even where the vehicle has been seized or impounded earlier or is otherwise effectively immobilized. In United States v. Johns, 469 U.S. 478, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985), the court held:
'There is no requirement that the warrantless search of a vehicle occur contemporaneously with its lawful seizure. Texas v. White, 423 U.S. 67, 68, 96 S.Ct. 304, 305, 46 L.Ed.2d 209 (1975) (per curiam); Chambers v. Maroney, 399 U.S. 42, 52, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970). "The justification to conduct such a warrantless search does not vanish once the car has been immobilized," Michigan v. Thomas, 458 U.S. 259, 261, 102 S.Ct. 3079, 3081, 73 L.Ed.2d 750 (1982) (per curiam). A vehicle lawfully in police custody may be searched on the basis of probable cause to believe that it contains contraband, and there is no requirement of exigent circumstances to justify such a warrantless search.' Id., at 261-262, 102 S.Ct., at 3081; see also Florida v. Meyers, 466 U.S. 380, 104 S.Ct. 1852, 80 L.Ed.2d 381 (1984) (per curiam).
A delay in the execution of the warrantless search is not necessarily unreasonable, particularly where the delay does not adversely affect legitimate interests protected by the Fourth Amendment. U.S. v. Johns, supra, 105 S.Ct. at p. 887.
In Florida v. Meyers, 466 U.S. 380, 104 S.Ct. 1852, 80 L.Ed.2d 381 (1984), the court held:
'The District Court of Appeal either misunderstood or ignored our prior rulings with respect to the constitutionality of the warrantless search of an impounded automobile. In Michigan v. Thomas, 458 U.S. 259, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982), we upheld a warrantless search of an automobile even though the automobile was in police custody and even though a prior inventory search had already been made. That ruling controls the disposition of this case. In Thomas, we expressly rejected the argument accepted by the District Court of Appeal in the present case, noting that the search upheld in Chambers was conducted "after [the automobile was] impounded and [was] in police custody" and emphasizing that "the justification to conduct such a warrantless search does not vanish once the car has been immobilized." 458 U.S., at 261, 102 S.Ct., at 3081. The District Court of Appeal's ruling that the subsequent search in this case was invalid because the car had been impounded is clearly inconsistent with Thomas and Chambers.'"

We find the decision in Ritchie persuasive and the authorities referred to therein controlling. Accordingly, we find that the trial court did not err in denying defendant's motion to suppress.

ASSIGNMENT OF ERROR NO. 2
Defendant argues that Louisiana State Police Trooper Legendre was improperly accepted by the trial court as an expert in the field of packaging, sale and distribution of marijuana and controlled dangerous substances.
La.C.E. art. 702 provides that a witness qualified as an expert by knowledge, skill, experience, training or education may give testimony as an expert. According to the redactors' comments, broad discretion is accorded the trial judge in his determination of who should or should not be permitted to testify as an expert.
In the instant case, Trooper Legendre was extensively questioned concerning his qualifications as an expert in the field of packaging, sales and distribution of marijuana. The trooper testified that he had been employed as a trooper with the Louisiana State Police for fourteen years and was presently working with the Narcotic Drug Smuggling Unit in conjunction with the United States Customs Department. He testified that he had worked in various *1007 undercover capacities and had attended various schools and seminars on the identification, detection etc. of controlled dangerous substances. The trial court did not err when it accepted Trooper Legendre as an expert.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 5
Defendant argues that testimony of the State's witnesses that the defendant made statements that could be construed as offering a bribe to the arresting officers were inadmissible. In support of this contention, defendant cites La.C.E. art. 404(B)(1), which provides as follows:
"Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceedings."
Comment (m) to Article 404 states that "[t]he phrase `or when it relates to conduct which constitutes an integral part of the act or transaction that is the subject of the present proceeding' has been added to the matters listed in Federal Rule of Evidence 404(B) as a substitute for the ambiguous phrase `res gestae' used in former La.R.S. 15:447-448." As has been noted, the phrase apparently is an articulation of the familiar phrase res gestae. Rault, An Overview of the New Louisiana Code of EvidenceIts Imperfections and Uncertainties, 49 L.L.Rev. 697, 709 (1989).
Defendant's statements to the police were admissible as such comments constituted an integral part of the transaction in question. The res gestae doctrine is broad and includes not only spontaneous utterances and declarations made before and after the commission of a crime, but also testimony of witnesses and police officers pertaining to what they heard or observed before, during or after the commission of a crime, if a continuous chain of events is evident under the circumstances. State v. Kimble, 407 So.2d 693, 698 (La.1981).
In the instant case, the statements made by defendant to the police would qualify as res gestae. The statements were made shortly after the defendant was arrested and taken to the police station. Therefore, it is part of one continuous transaction. The trial court did not err in overruling defendant's objection. See Edwards v. Butler, 882 F.2d 160 (5th Cir.1989).
This assignment of error lacks merit.

ASSIGNMENTS OF ERROR NOS. 3 AND 6
In assignment of error number three, defendant argues that the trial court erred when it failed to grant defendant's motion for post verdict judgment of acquittal. In assignment of error number six, defendant argues that the law and evidence does not support a verdict of guilty of possession of marijuana with intent to distribute. We will examine these assignments of error together since they are interrelated.
La.C.Cr.P. art. 821 provides that a post verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty.
In reviewing a conviction for sufficiency of evidence, the appropriate standard of review is, in viewing the evidence in a light most favorable to the state, could any rational trier of fact have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Lambert, 475 So.2d 791 (La.App. 3rd Cir.1985), writ denied, 481 So.2d 1345 (La.1986).
Defendant was convicted of possession with intent to distribute marijuana in violation of La.R.S. 40:966(A), which provides in pertinent part:

*1008 "A. Manufacture; distribution. Except as authorized by this part, it shall be unlawful for any person knowingly or intentionally:
(1) To produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance classified in Schedule I."
In the instant case, the officers testified that they found a pound of marijuana, a scale and some marijuana cigarette butts in defendant's car. Trooper Legendre, an expert in the packaging and sale of drugs, testified that the scale which was seized was probably used to weigh drugs for sale.
Defendant admitted to the police that he had purchased one pound of marijuana and Trooper Legendre testified that, in his fourteen years of law enforcement, he had never known anyone to possess one pound of marijuana for personal use. Moreover, Trooper Legendre testified that the package seized was a typical one pound bag of marijuana, the size which is normally sold. Finally, the trooper testified that marijuana is normally sold by "finger bags" although sometimes it is sold by weight. Viewing the evidence in a light most favorable to the prosecution, there was sufficient evidence to convict defendant of possession of marijuana with intent to distribute. Therefore, clearly the trial court did not err in denying defendant's motion for post verdict judgment of acquittal.
These assignments of error lack merit.

ASSIGNMENT OF ERROR NO. 4
Defendant argues that the trial court violated La.C.Cr.P. art. 884 in sentencing defendant to serve two years in the parish jail in default of paying a fine of $15,000.00. Defendant also argues that the overall sentence of $15,000.00 and eleven years at hard labor is excessive.
La.C.Cr.P. art. 884 provides:
"If a sentence imposed includes a fine or costs, the sentence shall provide that in default of payment thereof the defendant shall be imprisoned for a specified period not to exceed one year; provided that where the maximum prison sentence which may be imposed as a penalty for a misdemeanor is six months or less, the total period of imprisonment upon conviction of the offense, including imprisonment for default in payment of a fine or costs, shall not exceed six months for that offense."
Clearly, the sentence to pay a fine of $15,000.00 or in default thereof, to serve two years in the parish jail violates Article 884. State v. Lisenby, 534 So.2d 996 (La. App. 3rd Cir.1988). Since the sentence on its face is illegal, we will amend the sentence pursuant to the authority granted by La.C.Cr.P. art. 882.
Defendant's argument that the sentence is excessive is without merit. Defendant was sentenced under La.R.S. 40:966(B)(2), which reads:
"Any other controlled dangerous substance classified in Schedule I, shall upon conviction be sentenced to a term of imprisonment at hard labor for not less than five years nor more than thirty years and pay a fine of not more than fifteen thousand dollars."
Since defendant was sentenced to serve eleven years at hard labor plus pay a $15,000.00 fine, his sentence is near the mid range of the statutory limits. The law and jurisprudence involving the imposition of sentences within statutory limits is well established and will not be reiterated herein. See State v. Robicheaux, 412 So.2d 1313 (La.1982).
In sentencing defendant, the trial court pointed out that this was defendant's second felony drug conviction and that defendant's sentence on his first drug conviction did not deter him from dealing in drugs. Since the trial court is given wide discretion in imposing a sentence, a sentence imposed within the statutory limits will not be deemed excessive absent some manifest abuse of discretion. State v. Howard, 414 So.2d 1210, 1217 (La.1982). We find no clear abuse of discretion in the instant case.
For these reasons, defendant's conviction is affirmed. We amend the defendant's sentence such that in default of the payment of the $15,000.00 fine imposed, the defendant is to serve one (1) year in the *1009 parish jail. In all other respects, the sentence imposed is affirmed.
CONVICTION AFFIRMEDSENTENCE AFFIRMED AS AMENDED.